MAGOON, ADMR., APPELLANT, *v.* THE CLEVELAND TRUST CO., TRUSTEE, ET AL., APPELLEES.

(No. 23725—Decided May 21, 1956.)

*Messrs. Ganger & Ganger,* for appellant.

*Mr. Robert M. Lawther* and *Messrs. Ewing & Hecker,* for appellee The Cleveland Trust Co.

*Mr. William E. Todd, Sr.,* for appellees Ruth Bradley, Helen Bradley and Bertha Bradley.

Doyle, J. This is an action for a declaratory judgment, brought originally in the Common Pleas Court of Cuyahoga County, and subsequently appealed from a judgment there rendered to this court for trial *de novo*.

The pleadings seek a determination of the rights of the various parties (1) under the last will and testament of Howard R. Cull, deceased, and (2) under the provisions of an *inter vivos* trust which the said Howard R. Cull created as settlor with The Cleveland Trust Company, as trustee, for the benefit of himself and others, as subsequently modified in writing.

The indenture of trust provided for payment to the settlor of the entire net income from the trust estate, plus the payment of parts of the principal in stipulated amounts at various intervals of time. The conditions regulating these payments are of no consequence to a determination of this case and will therefore not be set out.

Of major importance is the following provision of the trust instrument:

"No power is reserved to me to revoke the settlement hereby evidenced, either in whole or in part, except that I retain the power to alter or amend the disposition to be made of the trust estate after my decease, and I hereby provide that any other revocation or amendment of this instrument shall be only with the consent and approval of the Probate Judge of Cuyahoga County, Ohio, any such revocation or modification to be evidenced by written instrument, signed by me, and delivered to the trustee. To whatever extent this settlement shall be so revoked, the trustee shall thereupon transfer and deliver to me such part or all of the property comprising the trust estate as may have been withdrawn under such revocation, conditioned, however, upon my repaying any advances made by the trustee, and satisfactorily indemnifying it against any liabilities incurred by it in the execution of this trust.

"* * *

"After my decease, the trust estate shall be held and disposed of as follows:

"The trustee is authorized and empowered to pay to, or for the benefit of, my surviving issue, such sum or sums from the income and/or principal of the trust estate as it shall deem prop-

er to provide for the suitable support, education and maintenance of such issue, until such issue shall attain the age of twenty-five (25) years, whereupon the trust estate shall be delivered to such issue; provided, however, that in event there be no issue surviving me, the trust estate shall vest in my surviving widow, if any, and in event I shall leave no widow surviving me, shall vest in the person or persons who shall constitute my next of kin under the laws and statutes of the state of Ohio relating to descent and distribution at such time in force and effect."

Approximately five years after the creation of the above trust, the settlor executed the following modification of the instrument:

"This instrument, of the 16 day of Jan., 1932, is to evidence that I, Howard R. Cull, of Cleveland, Ohio, the donor under a certain trust agreement entered into by and between me and the Cleveland Trust Company, of Cleveland, Ohio, as trustee, under date of March 7, 1927, pursuant to the right therein retained to me to modify the provisions relating to disposition of the trust estate after my decease, do hereby modify and, to the extent necessary to carry into effect the provisions herein contained but not otherwise, do revoke the terms of said instrument, in the following respect:

"Having provided on page four of said instrument, as follows:

"'* * * [Here is transcribed the provision of the original trust instrument heretofore set forth in this opinion which disposed of the trust property after settlor's decease.]

"I hereby cancel and revoke said provision, and substitute therefor the following:

"'The trustee is directed to pay the entire net income derived from the trust estate, in quarterly installments or oftener, to Ruth Bradley, during her life, and after her decease, or in event she shall not survive me, to pay the income derived from the trust estate, in equal shares, to such of the sisters of said Ruth Bradley, to wit: Helen Bradley, Adelaide Bradley and Bertha Bradley, as shall survive her, until such time as there shall be only one such surviving sister, whereupon the trustee is directed to distribute the trust estate to such survivor.

" 'In the event none of the said Bradley sisters shall survive me to take beneficially under this instrument, any portion or all of the trust estate so remaining undisposed of, as hereinabove provided, shall be distributed to the person or persons who shall constitute my next of kin, under the laws and statutes of the state of Ohio relating to descent and distribution at such time in force and effect.' "

This revocation and modification of the original trust instrument was sent to and received by The Cleveland Trust Company in compliance with the provisions of the trust instrument, as will be later shown.

On the 6th day of July, 1948, the settlor died testate, a resident of Lamoille, Vermont, and his will was there proved in, and "approved, allowed and confirmed, as the last will and testament of said deceased" by, the Probate Court of the District of Lamoille, Vermont.

The following provisions of the will are pertinent to our inquiry:

"3rd. This is my will and under powers reserved under my trust agreement with The Cleveland Trust Company, of Cleveland, Ohio, as trustee that in lieu of disposition of my trust estate after my decease as set forth in trust agreement, which instrument is dated March 9, 1927, and amended by instrument of modification dated January 16, 1932, properly executed by me and The Cleveland Trust Company of Cleveland, Ohio, as trustee, I hereby direct that the following disposition be made of my trust estate after my decease:

"I give, devise and bequeath unto James Foulkes-Poole, of Stowe, Vermont, one-half of all assets in said trust at the time of my decease, together with one-half of all income from said trust estate after my decease; and I give, devise and bequeath unto Ruth Rebecca Bradley, Helen Bradley and Bertha Bradley, all c/o The Cleveland Trust Company, East 9th and Euclid, Cleveland, Ohio, each one-sixth of all assets in said trust at the time of my decease, together with one-sixth each of all income from said trust estate after my decease."

In posing the questions for decision, we adopt the language of the appellant:

"Did the settlor reserve the power in the trust agreement

to dispose of the assets and income of the trust property by will? and, if so, did his will effectively dispose of these assets and income to Mr. Foulkes-Poole and the Bradleys, in the proportions named in the will?"

1. As to the trust.

That a settlor has the right to retain the power to alter, amend or revoke a trust *inter vivos* is no longer subject to dispute in this state.

Section 1335.01, Revised Code, provides:

"All deeds of gifts and conveyances of real or personal property made in trust for the exclusive use of the person making the same are void, but the creator of a trust may reserve to himself any use of power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend, or revoke such trust, and such trust is valid as to all persons, except that any beneficial interest reserved to such grantor may be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court, at the suit of any creditor of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same."

See: *Harris* v. *Harris*, 79 Ohio App., 443, 74 N. E. (2d), 407, and cases therein cited. (Affirmed, *Harris* v. *Harris, a Minor,* 147 Ohio St., 437, 72 N. E. (2d), 378.)

In the instrument under scrutiny, while the settlor reserved no power to revoke the settlement, he did reserve the power, as was his right, to alter or amend the instrument in a stipulated way. The indenture of trust we find to be a valid and legal instrument, and sufficient to dispose of the settlor's property according to its terms.

A rule of general application throughout the country is to the effect that the settlor of a trust who has reserved the right to alter, amend or revoke it by giving written notice to the trustee, cannot revoke the trust settlement by his last will and testament.

It is well stated in 4 Bogert on Trusts and Trustees (Part 2), Section 996, that:

"A power to revoke or alter a trust must be executed in

accordance with its terms. If it is a power to revoke by deed, it cannot be exercised by an undelivered deed; if a power to revoke by deed witnessed, neither an assignment nor a will are sufficient; if the instrument provides for revocation by deed, there is clearly no power to destroy the trust by will; if the power is to cancel the trust by will, a deed will have no effect; if by written notice to the trustee, a return of the trust instrument by the trustee to the settlor at the latter's request will not revoke; if by two settlors acting jointly, one alone cannot revoke; if by the settlor and trustee, the former cannot act alone; if by joint action of the trustee and cestui, the cestui is powerless to revoke by his several acts. * * *''

The many authorities cited for the above text all bear out either directly or inferentially the statement in 2 Restatement of the Law of Trusts, Section 330, paragraph ''j,'' at page 994:

''If the settlor reserves a power to revoke the trust only in a particular manner or under particular circumstances, he can revoke the trust only in that manner or under those circumstances.''

See also: 54 American Jurisprudence, Trusts, Sections 77 and 78; 89 Corpus Juris Secundum, Trusts, Section 91, and cases therein cited.

It is claimed by the appellant that the settlor ''reserved the right to alter and amend the disposition of the trust property by last will and testament,'' and that the phrase in the instrument, ''I retain the power to alter or amend the disposition to be made of the trust estate after my decease,'' when read in connection with the entire instrument, meant only that ''the settlor reserved no power to revoke the settlement, either in whole or in part, except for the retention of the power to alter or amend the disposition of the trust estate after his decease,'' and that ''any other revocation or amendment required the consent of the probate judge and evidenced by written instrument signed by settlor and delivered to the trustee.''

From the stipulation of facts it is observed that, when the settlor modified the original instrument by changing the beneficiaries and directing the manner of payment, he signed and delivered a written instrument to that effect to the trustee. It is further observed that at no time did he seek the consent and

approval of the Probate Court for any revocation or amendment of the instrument. There is also an absence of any language which would authorize an amendment of the trust agreement by will, unless the language quoted above—"I retain the power to alter or amend the disposition to be made of the trust estate after my decease"—may be construed to mean that he retained the power to amend the instrument by will.

To the members of this court, the language employed in the indenture of trust is clear and the intention plain. In giving effect to the words used, we find an absence of any language which would authorize a revocation, modification or alteration of the trust by will, or from which even an inference to that effect could be drawn. Undoubtedly the testator intended to revoke and modify the award made in the trust to the named beneficiaries by his will, but to effectively do this his intentions alone were not sufficient.

As heretofore stated, any reserved power to revoke, alter or modify a trust must be executed in accordance with its terms. 3 Scott on Trusts, Section 330.8. By the terms of the instrument, the settlor provided for his own welfare during his lifetime, and then reserved to himself no power to revoke that settlement. He did, however, retain the power to "alter or amend the disposition to be made of the trust estate" after his death. This language obviously means that if, during his lifetime, he desired to change those beneficiaries who were designated to receive the remaining assets of his trust estate at his death, he could do so in a particular manner—i. e., by written instructions, signed by him and delivered to the trustee; and this is what he did on one occasion. The approval of the Probate Court was required for "any other revocation or amendment" of the instrument, but was not required for a change of those beneficiaries who were to receive at his death.

There is a statement in 54 American Jurisprudence, Trusts, Section 77, in the following terms:

"While, without question, the settlor of a trust may revoke the trust where power of revocation is validly reserved, if a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective. Where the right to revoke is reserved and

no particular mode is specified, any mode sufficiently manifesting an intention of the trustor to revoke is effective. Revocation may be effected by a devise of the corpus of the trust by a will if duly executed. Whether a will impliedly revokes a revocable trust is a question of intention.''

We are not called upon to decide, nor do we decide in this case, the effect of a will on a revocable trust when no particular mode of revocation is specified. In the case before us, the settlor did specify a particular mode of revocation and alteration in the trust instrument, which bound him to its terms.

We have no doubt an effective revocation or alteration of the terms of the trust now before us was required to have been made during the lifetime of the settlor.

Many cases support this view, and we cite one of the leading ones—i. e., *Kelley, Exr. & Trustee,* v. *Snow,* 185 Mass., 288, 70 N. E., 89. In that case, the maker of the trust conveyed property to a trustee to be distributed at the death of the donor, and retained the power to change the disposition on writiten notice to the trustee. Later, the settlor executed her will, reciting the existence of the trust, and sought to revoke it. Specifically, she recited in the will, after identifying the trust, ''I do now cancel said disposition and revoke the same and in place thereof substitute the following bequests:  * * *.'' The court held that, while she had power to change the terms of the trust, the exercise of that power was conditioned upon giving written notice to the trustee.

The court said (at page 298):

''This condition, especially when taken in connection with the entire absence of any express power by will, shows that the power was to be exercised and the changes were to take effect in her lifetime and not by way of a will.''

The court held the trust still in existence as originally created.

In so far as this phase of the case is concerned, we hold that the power of revocation or alteration is perfectly consistent with the creation of a valid trust. It does not affect the legal title to the property. The corpus passes to the trustee and remains vested for the purposes of the trust, notwithstanding a right to revoke or alter it. If the right to revoke, alter or mod-

ify the terms is never exercised according to the terms in which it is reserved (as in the case at bar, except in the one instance) until after the death of the donor (a will becomes effective only upon the death of the testator), such attempt after death can have no effect on the validity of the trust or on the right of the trustee to hold the property for proper distribution under the terms of the trust.

It is therefore determined, in answer to the *quaere* of the appellant, that the settlor did not reserve the power in the trust instrument "to dispose of the assets and income of the trust property by will," and that, as a consequence thereof, his will did not, nor could it "dispose of these assets and income to Mr. Foulkes-Poole and the Bradleys, in the proportions named in the will."

2. During the hearing of this case in this court, the question arose for the first time as to whether Robert A. Magoon, administrator of the estate of James Foulkes-Poole, deceased, was a proper party plaintiff, "with power and authority and the right to maintain this action for possession or the right of possession of any part of the trust estate."

It has been stipulated that the estate of Howard Richard Cull had been closed, and the executor of that estate discharged from further duties by the Vermont court.

As heretofore observed, this case was commenced in the Common Pleas Court of Cuyahoga County and was there heard upon the pleadings in which not only the plaintiff sought a declaration of the rights of the parties under the trust and under the will, but the defendants likewise, by their answers, sought a similar declaration.

From the judgment there rendered, the cause came to this court on appeal for trial *de novo*, and was here heard upon the same pleadings. No motion, challenging the right of the plaintiff to bring the action, was made in the Court of Common Pleas, nor was the plaintiff's right challenged in this court until after the introduction and admission of the evidence.

That this court has jurisdiction of the subject matter of the appeal cannot be questioned. Any irregularity in bringing the action, if such a claim could be successfully urged at a proper time, has been waived by a failure of the parties to timely raise

the question, and by the unanimous request of all parties in their pleadings that a declaratory judgment be rendered. It may be succinctly stated that an objection of want of capacity to sue cannot be taken, under circumstances as herein shown, after issue is joined on the merits and all the evidence has been introduced.

While the question of capacity to bring the suit is of academic interest by virtue of the declaratory judgment statutes, we deem further comment unnecessary, in view of the disposition made in the preceding paragraph.

An entry of judgment will be made in compliance with the foregoing declaration, coupled with a refusal to permit the filing of the ''supplemental joint answer'' and a refusal to admit in evidence the proposed additional stipulations.

*Decree accordingly.*

STEVENS, P. J., and HUNSICKER, J., concur.

STEVENS, P. J., HUNSICKER and DOYLE, JJ., of the Ninth Appellate District, sitting by designation in the Eighth Appellate District.