CONNECTICUT GENERAL LIFE IN-
SURANCE COMPANY, Plaintiff,

v.

FIRST NATIONAL BANK OF MINNE-
APOLIS, Trustee of the John W. Au-
ghenbaugh Trust, Respondent,

and

Mrs. Marilyn Aughenbaugh, Appellant.

No. 47560.

Supreme Court of Minnesota.

Dec. 16, 1977.

Schermer, Schwappach, Borkon & Ramstead and Richard I. Diamond, Minneapolis, for appellant.

Fredrikson, Byron, Colborn, Bisbee & Hansen and Jerome S. Rice and Neil A. Weikart, Minneapolis, for respondent.

Heard before PETERSON, YETKA, and IVERSON, JJ., and considered and decided by the court en banc.

YETKA, Justice.

Appeal from judgment and order denying appellant's motion for amended findings of fact, conclusions of law, and order for judgment. The plaintiff, Connecticut General Life Insurance Co., filed a complaint in interpleader on September 9, 1974. After answers and counterclaims were filed, plaintiff deposited disputed life insurance proceeds with the court and was dismissed from the proceedings. After a trial without a jury, the District Court in Hennepin County determined that the disputed insurance proceeds were to be paid to the First National Bank of Minneapolis, as trustee of the John W. Aughenbaugh Trust.[1] Mrs. Marilyn Aughenbaugh appeals from that determination. We affirm.

On February 2, 1965, Connecticut General Life Insurance Co. (Connecticut General) issued John W. Aughenbaugh a life insurance policy. At that time there was in existence a Last Will and Testament of John W. Aughenbaugh, executed on or about March 16, 1964, which left his estate to Elizabeth Ann Aughenbaugh. On May 4, 1967, John W. Aughenbaugh executed a new will. On the same date he executed an instrument creating the John W. Aughenbaugh Revocable Insurance Trust (the trust). First National Bank of Minneapolis (respondent) was named as trustee. Part of the funding for the trust was to be provided by the Connecticut General policy. The trust was not funded in any respect except by the insurance policies listed. The respondent, First National Bank of Minneapolis, was made beneficiary of the Connecticut

General Insurance policy; the trust beneficiaries were Elizabeth Ann Aughenbaugh and three Aughenbaugh children. There were other trusts created in the instrument but they are not in issue in the present case.

In February 1972 the last premium was paid. At that time John W. Aughenbaugh and Elizabeth Ann Aughenbaugh were married and living in Minneapolis. On November 10, 1972, they were divorced, and on February 14, 1973, John W. Aughenbaugh and Marilyn L. Melaas (appellant) were married in Nevada.

In April 1973 Aughenbaugh and his second spouse moved to Arizona. On or about October 16, 1973, John W. Aughenbaugh executed a document entitled "Will." The will purported to "supercede and cancel any previous wills or trusts established by me." It was entrusted by John Aughenbaugh to his wife Marilyn after it was executed. He died on October 21, 1973. The will was probated in Arizona. After several exchanges of documents between Connecticut General and appellant, the present action was instituted raising the issue as to whether the will executed by John W. Aughenbaugh on October 16, 1973, operated to revoke the John W. Aughenbaugh Revocable Insurance Trust, created May 4, 1967. The trial court held in the negative.

Appellant appears to raise five points in her brief, but three of those issues depend primarily upon whether the trust is inter vivos or testamentary in nature. The remaining two issues involve interpretation of the trust agreement itself.

(1)  Is a revocable life insurance trust inter vivos or testamentary?

Unless the trust can be characterized as testamentary, appellant's contentions that it can be revoked without notice and that it was impliedly revoked by the settlor's subsequent divorce and remarriage must fail. Appellant cites no authority for the proposition that a revocable life insurance trust is

1.  Amended findings of fact, conclusions of law, and order for judgment, correcting a technical

defect in the disposition of the escrow funds, were entered on January 18, 1976.

testamentary, even when the trust instrument is executed contemporaneously with a will. Thus, if the trust was inter vivos, much of the force of appellant's argument is lost.

■ In Minnesota, as in the overwhelming majority of jurisdictions,[2] a revocable life insurance trust is not testamentary, even though the settlor reserves the right to revoke or otherwise change it. *In re Estate of Soper*, 196 Minn. 60, 65, 264 N.W. 427, 430 (1935).

The only argument which appellant raises is that the trust would have no funds and would thus not operate or take effect until the death of the testator and is thus similar to other testamentary dispositions. She does not address the authorities or case law and advances no reasons for this court to change well settled trust law. Further, the appellant notes that Minn.St. 525.223, the Uniform Testamentary Additions to Trusts Act, appears to treat such trusts as non-testamentary. This statute allows the creation of "pour over" trusts and allows certain estate assets to be put into trusts which might otherwise fail because of lack of testamentary formalities. Thus, the trust was in force and there was a trustee appointed and acting at the time the new will of Mr. Aughenbaugh was executed in October, 1973.

(2) Revocation of the trust by will.

■ It is the general rule that where a settlor reserves the power to revoke a trust by a transaction inter vivos, as for example by notice to the trustee, he cannot revoke the trust by his will. Restatement, Trusts

(2d) § 330, comment *j*; Bogert, Trusts and Trustees, § 1001 (2 ed.); IV Scott on Trusts, § 330.8 (3 ed.).[3] The trust involved in the present case includes the following clause:

"3.1) *Reservations Affecting the Trust.* Donor reserves the right to amend this agreement from time to time in any and all respects; to revoke the trust hereby created, in whole or in part; and to change the identity or number (or both) of the trustee or trustees hereunder, *by written instrument executed by Donor and delivered to any trustee* (or to Donor's wife if no trustee is acting at a particular time) *during Donor's lifetime*; provided, however, that the duties and responsibilities of the Trustee shall not be substantially increased by any such amendment without its written consent." (Italics supplied.)

The trial court interpreted this clause to mean that the trust could only be *revoked* by written instrument as set forth above. We agree.

Although the clause is not a model of good drafting, appellant concedes that the obvious intent of the section and the requirement of written notice is to protect the trustee. But once this purpose is conceded, any claimed ambiguity in this section of the trust disappears. Maximum protection for the trustee is provided by requiring all major changes to be made by notice to the trustee.[4]

This position, taken by the trial court, appears reasonable because the trustee would wish to know of any major change in its duties; revocation or amendment of the trust would constitute as major a change as

**2.** See, cases collected at Annotation, 53 A.L. R.2d 1114; Scott on Trusts, § 57.3, n. 4 (3 ed.); Bogert, Trusts and Trustees, § 239, nn. 47, 48 (Rev. 2d ed.); cf. Restatement, Trusts (2d) § 57, comment *f*.

**3.** *Chase National Bank of New York v. Tomagno*, 172 Misc. 63, 14 N.Y.S.2d 759 (1939); *In re Lyons' Estate*, 164 Pa.Super. 140, 63 A.2d 415 (1949); *Brown v. International Trust Co.*, 130 Colo. 543, 278 P.2d 581 (1954); *Magoon v. Cleveland Trust Co.*, 101 Ohio App. 194, 134 N.E.2d 879 (1956); *Rosenauer v. Title Insurance and Trust Co.*, 30 Cal.App.3d 300, 106 Cal.Rptr. 321 (1973); *Cohn v. Central National*

*Bank of Richmond*, 191 Va. 12, 60 S.E.2d 30 (1950).

**4.** Appellant attempts to argue that because the provisions were intended to protect the trustee they should be construed strictly against him. This non sequitur is a misapplication of the basic contract principle that ambiguous clauses are to be interpreted strictly against the drafter. *Beattie v. Product Design & Engineering, Inc.*, 293 Minn. 139, 198 N.W.2d 139 (1972). In fact, the trustee is acting on behalf of Elizabeth Aughenbaugh and the Aughenbaugh children.

an increase or decrease in the number of trustees. The sense of the clause, taken as a whole, is that changes which do not substantially increase the duties and responsibilities of the trustee may be made unilaterally by giving written notice, but that the trustee must concur in substantial increases in its duties.

Affirmed.

TODD, J., took no part in the consideration or decision of this case.