751 F.2d 157
 Cynthia B. WOODWARD, Plaintiff-Appellant,
v.
AMERITRUST COMPANY, Formerly Cleveland Trust Co.; Mary E.
Beam; Margaret Beam; Joseph M. Woodward; Mitchell,
Mitchell & Reed; James E. Mitchell; George B. Woodman; W.
Brooks Reed; George Limbert; and Paul Dutton, Defendants-Appellees.
 Nos. 83-3435, 83-3564.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 6, 1984.
Decided Dec. 21, 1984.
 
 Theodore E. Wolcott, San Francisco, Cal., for plaintiff-appellant.
 Robert B. Nelson, Maynard F. Thomson (argued), Jones, Day, Reavis & Pogue, Cleveland, Ohio, for Ameritrust Co.
 C. Kenneth Clark, Jr., Youngstown, Ohio (argued), Hugh M. Stanley, Jr., Cleveland, Ohio, for Beams.
 George W. Stuhldreher (argued), Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for James E. Reed, George B. Woodman, W. Brooks Reed, George Limbert, Paul Dutton and Mitchell, Mitchell & Reed.
 Before LIVELY, Chief Judge, WELLFORD, Circuit Judge, and ROSENN, Senior Circuit Judge.*
 WELLFORD, Circuit Judge.
 
 
 1
 This is a diversity action brought under 28 U.S.C. Sec. 1332 dealing with the construction of language contained in a trust. Appellant, Cynthia B. Woodward, is a citizen of California, while defendants-appellees are all citizens of Ohio for diversity purposes.[1] The amount in controversy exceeds $10,000.[2] Appellant seeks a declaratory judgment, under 28 U.S.C. Sec. 2201, that she is the sole life tenant of this inter vivos trust (the "Trust"), which was created by her mother, Blanche B. Woodward, deceased ("Blanche").
 
 I.
 
 2
 The Trust was established by Blanche in December 1969 through the execution of a formal trust agreement with the Cleveland Trust Company (now Ameritrust Corporation--"Ameritrust"). This agreement named Ameritrust as trustee, and named Blanche, herself, and appellant as sole beneficiaries. Blanche was to receive the income from the Trust for her life, with the remainder to be paid to appellant. Blanche expressly retained the power to revoke or amend the Trust, such power being contained in the following language of the agreement:
 
 
 3
 The Grantor during her lifetime reserves the right to revoke this Trust in whole or in part, by filing a written instrument with the Trustee; and upon revocation, the Trust Estate, or any portion thereof with respect to which the Trust is revoked, shall be returned to the Grantor. Grantor further reserves the right to amend any provision of this Trust Agreement at any time during her lifetime by filing a written amendment with the Trustee; but if the Trustee does not consent to such amendment, the Trustee may terminate the Trust and return all of the Trust Estate to the grantor. At the death of the Grantor, this Trust shall become irrevocable.
 
 
 4
 In July 1973, Blanche exercised this power to amend the Trust by delivering a written instrument to Ameritrust. The writing was signed by both Blanche and a representative of Ameritrust, and acted to amend the Trust by changing both its investment restrictions and its dispositive provisions. As to the dispositive provisions, the amendment provided that Blanche was to continue to receive the income from the Trust for her life; however, at her death the income was to be directed toward Blanche's husband, John A. Woodward, for his life. At his death the income was then to go to appellant for her life, and the remainder was left to Blanche's surviving sisters and the surviving brothers of John Woodward.
 
 
 5
 On November 2, 1974, John Woodward died, leaving appellant as the beneficiary immediately entitled to a life interest in the Trust following her mother's death. On November 3, 1975, Blanche executed a formal second amendment to the Trust along with one duplicate original, which were both mailed to Ameritrust on November 4, 1975. Along with the duplicate originals, Blanche's attorney, George Woodman, enclosed a letter requesting that Ameritrust "execute" both originals and return one "fully executed." On November 14, 1975, Ameritrust, through one of its trust officers, T.P. Demeter, returned the two duplicate originals, which it had received in due course, to Mr. Woodman, unexecuted, along with a letter stating that the second amendment had been reviewed by counsel, and that counsel had various "comments" to make concerning the "proposed second amendment." The comments were included with this letter. Ameritrust retained a copy of the second amendment for its files.
 
 
 6
 The second amendment as originally drafted by Mr. Woodman and signed by Blanche essentially changed only the dispositive provisions of the Trust, and it is the validity of this amendment that is here in controversy. Under this amendment Blanche retained her life interest in the Trust, but she added successive life interests in her sisters, Mary E. Beam and Margaret Beam, after that of her own. Appellant, as a remainder beneficiary, was granted a life interest with a limited right to invade the principal, but this took effect only following the interests of Blanche's sisters.[3]
 
 
 7
 Ameritrust essentially commented in its suggestions for revision that the amendment might have adverse estate tax consequences, and also that one dispositive provision might result in a per capital distribution, a result possibly not contemplated by the settlor. In addition, Ameritrust questioned the clarity of the power of appointment given appellant under this disputed amendment to the Trust.
 
 
 8
 Mr. Woodman retained both duplicate originals of the second amendment after receipt, but drafted two substitute pages to implement the changes recommended by Ameritrust.[4] On December 1, 1975, Mr. Woodman delivered a "revised" second amendment to Blanche, who at that time was an invalid, and asked her to sign it. It is unclear whether he explained to Blanche all of the circumstances surrounding the revision.[5] In any event, Blanche did not sign the proposed revision; instead she indicated that she would like to think about it and discuss it with appellant who was expected to visit her soon.
 
 
 9
 On December 18, 1975, Blanche died without ever signing the revision to the Trust. By letter dated January 22, 1976, Mr. Woodman once again sent the original second amendment, signed by Blanche in November 1975, to Ameritrust. Again Mr. Woodman requested that it be executed with a copy being returned to him. The second amendment as it existed when originally signed by Blanche was then signed by an officer of Ameritrust on February 23, 1976. Ameritrust has continuously acted under the terms of the second amendment to the Trust, and has never attempted to terminate the trust relationship.
 
 
 10
 Appellant filed the present action alleging that the attempted second amendment to the Trust was ineffective and that she was entitled to the income from the Trust upon Blanche's death pursuant to its terms as contained in the July 1973 amendment. Appellant joined as defendants not only Ameritrust and the income beneficiaries under the second amendment (Mary and Margaret Beam), but also Mr. Woodman and his entire law firm. Appellant sought declaratory relief, and also charged defendants with fraudulent behavior and breach of fiduciary duties. The district court entered summary judgment for all the defendants, holding that the second amendment was valid and concluding that there was no fraud nor breach of any fiduciary duty.
 
 II.
 
 11
 The question in this case is simply whether the second amendment sent to, but not signed by, Ameritrust on November 4, 1975, effected a valid modification of the Trust, and thus whether summary judgment was appropriate. The law is well-settled in Ohio that the settlor of an inter vivos trust "may reserve various rights and powers in relation to the trust estate." Cleveland Trust Co. v. White, 134 Ohio St. 1, 15 N.E.2d 627, 629 (1938). In acting to exercise any of these reserved rights, the settlor must act as provided in the reservation. Magoon v. Cleveland Trust Co., 101 Ohio App. 194, 134 N.E.2d 879, 882 (1956); see also Restatement (Second) of Trusts Sec. 331 comment d (1959).
 
 
 12
 The settlor reserved the right to modify the Trust in her lifetime "by filing a written amendment with the Trustee; but if the Trustee does not consent to such amendment, the Trustee may terminate the Trust and return all of the Trust Estate to the grantor." Appellant argues that in order to amend the Trust two separate conditions had to have been met; first, Blanche had to file a written amendment with the Trustee, and second, the Trustee had to "consent to such amendment." Because under the present facts no consent was given by the Trustee during Blanche's lifetime, appellant contends that the second amendment was never effectuated.
 
 
 13
 Ameritrust,[6] on the other hand, asserts that only one condition was involved in amending the Trust. All the settlor was required to do was to "file" a written amendment with the Trustee, and this being done, the amendment was effective whether or not the Trustee consented. The consent provision contained in the Trust, it is argued, merely provided the Trustee with a means to avoid being bound by harsh, unwanted amendments, and a means to terminate its trusteeship in that event. We agree. Ameritrust's termination of its interest, in our view, would not affect the validity of any properly executed single amendment, nor would it necessarily revoke and/or bring to an end the entire trust.[7] Under the undisputed facts as they exist in this case, a written amendment was filed with Ameritrust during Blanche's lifetime. The amendment then immediately became effective even though Ameritrust had suggestions for purported improvements in carrying out Blanche's purposes. Ameritrust then had, but failed to exercise, the right to terminate its trusteeship. The fact that Ameritrust sent the second amendment back, unexecuted, with comments for revision is irrelevant to our determination of a valid execution and delivery of the amendment in question.
 
 
 14
 We therefore agree with the district court that there was only one condition precedent to the amendment of the Trust; that the settlor file "a written amendment with the Trustee." The execution and delivery effectuated a filing of the amendment with Ameritrust, the trustee, which then continued to serve in that capacity without any effort to terminate its trusteeship or to "terminate" the carrying out of the amended trust provisions.
 
 
 15
 What has complicated this case are the actions of both Mr. Woodman and Ameritrust. It is true as appellant insists that both of these defendants acted as if the original second amendment signed and filed by Blanche was not effective until accepted by Ameritrust. Mr. Demeter, the bank official, characterized this amendment as only being "proposed."[8] Both the July 1973 amendment and the amendment in dispute here were drawn with spaces provided for the signature of Ameritrust, which signed the first amendment and then delayed in signing the second amendment until after the settlor's death.
 
 
 16
 We conclude, nevertheless, that it is unnecessary to look to these extrinsic facts to decide this case. The language of the Trust is unambiguous, and extrinsic evidence therefore is not necessary to prove the meaning of its terms. Such evidence is only admissible where the language is either uncertain or ambiguous. Restatement (Second) of Trusts Sec. 38 comment a; Wooster Rubber Co. v. Commissioner, 189 F.2d 878 (6th Cir.1951). The fact that both Mr. Woodman and Ameritrust were uncertain of the language's meaning (or even wrong about it), as evidenced by their conduct, does not render the language unclear. Appellant's attempt to read a second condition into the clause in question is in effect an effort to require the Trust to conform to the conduct of the parties. We believe that just the opposite is required; all parties are required to abide by the clear terms of the Trust.
 
 
 17
 Even if the language of the modification clause were deemed ambiguous, we are not convinced that the conduct of Mr. Woodman, the settlor and Ameritrust establish the necessity of the consent of Ameritrust to an amendment. At most, the conduct of Ameritrust and Mr. Woodman establishes that they may have believed both filing and consent were required; but "if there are ambiguities in the construction of the terms of [the] reservation, the Court will adopt that construction which will result in sustaining the questioned provision to the end that the intention of the settlor or testator may be carried out." Florance v. Mercantile National Bank at Dallas, 343 N.W.2d 297, 298 (Minn.Ct.App.), review granted, 351 N.W.2d 1 (Minn.1984). Blanche, the settlor, intended to execute the original second amendment, and apparently intended it to be effective during her lifetime. Therefore, even if the language were unclear, we would tend to adopt a construction sustaining this intent. Appellant then would still not be entitled to judgment in her favor.
 
 
 18
 Further, Blanche's later conduct after signing the amendment and placing it in her lawyer's hands for filing with Ameritrust does not evidence any intent other than that the amendment remain effective. Mr. Woodman did not suggest to the settlor that Ameritrust had totally rejected the second amendment, or that it was attempting to terminate the Trust. There is no evidence tending to indicate that the settlor ever felt her amendment to the Trust was ineffective. She was willing to consider further suggested changes and wanted to discuss the situation with appellant. Furthermore, when Ameritrust returned the second amendment, it made various suggestions, but these comments concern not the substance of the amendment, but its form.[9] It can thus not be said that Ameritrust intended to reject the substance of the amendment. Ameritrust was primarily concerned only with possible tax consequences that might befall the trust estate or beneficiaries.
 
 III.
 
 19
 Accordingly, we AFFIRM the district court's granting of defendants' motion for summary judgment.[10]
 
 
 
 *
 Honorable Max Rosenn, Senior U.S. Circuit Judge, United States Court of Appeals for the Third Circuit, sitting by designation
 
 
 [1]
 Ameritrust Corp. is an Ohio corporation with its principal place of business in Ohio; Mary E. Beam, James E. Mitchell, George B. Woodman, W. Brooks Reed, George Limbert and Paul M. Dutton are all citizens of Ohio
 
 
 [2]
 The trust estate was originally valued at somewhere between $350,000 and $500,000, with an annual income of approximately $28,000. Appellant claims she was entitled to this income from 1976 until the present time, and is entitled to it in the future. Appellant also seeks compensatory damages in the sum of $1,000,000 for fraud and breach of fiduciary duties
 
 
 [3]
 Appellant was also given a testamentary power of appointment over the remaining principal of the Trust
 
 
 [4]
 None of the substantive dispositions of the amendment, which in fact were never questioned by Ameritrust, were altered by Mr. Woodman in his proposed redraft
 
 
 [5]
 Mr. Woodman, in his deposition, stated that he showed the "revised" second amendment to Blanche and told her "that the trust company had indicated that they would like some changes in the language, but that it was up to her whether she wanted to make those changes." Whether Blanche was ever told of Ameritrust's failure to sign the second amendment as originally drafted is unknown
 
 
 [6]
 All of the defendants join in this argument
 
 
 [7]
 Upon termination of the trusteeship, a new trustee could always be appointed
 
 
 [8]
 Mr. Demeter later stated in his deposition, however, that when he received the original draft of the second amendment he believed it was a "good" amendment
 
 
 [9]
 The per stirpes or per capita determination would not affect the interpositioning of the additional life tenants before appellant's remainder interest
 
 
 [10]
 Because we hold for defendants on the issue of whether appellant was entitled to the income from the Trust, we find it unnecessary to address appellant's claims of fraud and breach of fiduciary duties on the part of Mr. Woodman and Ameritrust. The basis of these claims was appellant's argument that she was wrongfully deprived of the Trust income. We have held that appellant was not entitled to the Trust income, and thus she could not have been wrongfully deprived of it