# LOURDES COLLEGE OF SYLVANIA, OHIO, et al.

### v.

### BISHOP.

Court of Common Pleas of Ohio,
Lucas County.

No. CI95–3574.

Decided June 4, 1997.

**52**

*Shumaker, Loop & Kendrick, John C. Barron* and *Terrance K. Davis,* for Lourdes College of Sylvania, Ohio.

*Syring & Syring, William J. Syring* and *Paul F. Syring,.* for University of St. Michael's College.

*Robinson, Curphey & O'Connell, Michael S. Messenger* and *Matthew D. Harper; Hamilton & Hamilton* and *Richard E. Jordan,* for Catholic University of America.

*Frederickson & Heintschel Co., L.P.A., Craig F. Frederickson* and *Thomas W. Heintschel,* for defendant.

CHARLES J. DONEGHY, Judge.

This declaratory judgment and tortious interference action is before the court on the separate motions for partial summary judgment filed by plaintiffs Lourdes College of Sylvania, Ohio ("Lourdes"), University of St. Michael's College ("St. Michael's"), and Catholic University of America ("Catholic University"),[1] and on the motion for summary judgment filed by defendant J. James Bishop II. Upon review of the pleadings, evidence, memoranda of the parties, and applicable law, the court finds that the plaintiffs' motions should be granted and that Bishop's motion should be denied. The court also finds that, as a result of our decision on the plaintiffs' motions for partial summary judgment, the plaintiffs' claims against Bishop for tortious interference are moot and should be dismissed.

## I. FACTS

This case addresses the validity of a purported third amendment ("the third amendment") to a revocable inter vivos trust ("the Trust" or "the trust agreement") established by the elderly grantor/settlor, Rita O'Grady, on or about February 22, 1990. The Trust provided for income to be paid to O'Grady during her lifetime. Upon her death and after the payment of debts and taxes owed by her or her estate, the Trust provided for certain specific bequests and allocated the residue of her estate to four designated recipients.[2]

On or about August 28, 1991, O'Grady executed a first amendment ("first amendment") to the Trust. Among other changes, O'Grady made the following changes to the residual beneficiary clause: (1) deleted the prior gifts and (2) added bequests to Lourdes (sixty percent of residual), Catholic University (twenty percent), and St. Michael's (twenty percent).

On or about September 21, 1992, O'Grady executed a second amendment ("second amendment") to the Trust. The second amendment made changes to the specific bequests but left the residual bequests to Lourdes, Catholic University, and St. Michael's intact.

On or about October 7, 1993, O'Grady allegedly executed the third amendment. At the time she was convalescing in the Toledo Hospital. Earlier in the day, she had received treatment in that hospital's intensive care unit, where she had been under soft wrist restraints after she had tried to remove a feeding tube against

---

1. These parties shall be referred to collectively as "the plaintiffs."

2. The allocations were as follows: thirty percent to Lourdes; twenty percent to St. Vincent Hospital and Medical Center Foundation; ten percent to the National Catholic School of Social Service, Catholic University, Washington, D.C.; and forty percent to her Charitable Remainder Annuity Trust.

the instructions of her physician. Pertinent to this case, the third amendment revoked the bequests to Catholic University and St. Michael's, and decreased the bequest to Lourdes from sixty to fifty percent. The third amendment also purports to make Bishop a fifty-percent beneficiary of the Trust. Bishop was a family friend and, according to O'Grady's responses on the hospital's admissions documents, Bishop was her attorney. Bishop drafted the second amendment, served as an advisor to the Trust, and was O'Grady's attorney-in-fact for purposes of her living will. Another attorney, Paul McCrory, claims to have drafted the third amendment. McCrory contends that he had asked Bishop to take the document to O'Grady in the hospital for her to execute it. O'Grady appears to have executed the third amendment on October 7, 1993, with Bishop looking on and two hospital employees serving as witnesses.

O'Grady died on October 25, 1993. McCrory's office delivered the third amendment to the trustee, Key Bank (or its predecessor Society Bank),[3] on October 26, 1993. The trustee brought a declaratory judgment action in the probate division of this court[4] on April 6, 1995, to determine the validity of the third amendment. That case brought into question the timeliness of the delivery of the purported amendment and related questions. That action named the trustee as plaintiff and the beneficiaries listed in the Trust and the three amendments as defendants. Subsequently, Lourdes filed the instant case in this court against defendant J. James Bishop II, alleging that he exercised undue influence over O'Grady and, thereby, unlawfully and tortiously interfered with Lourdes's expected gift from O'Grady by procuring the third amendment. Catholic University and St. Michael's joined this action. Subsequently, the probate action was consolidated with the instant case, permitting a joint disposition of these related disputes.

The plaintiffs and Bishop now seek a summary judgment regarding the validity of the third amendment. Bishop also seeks a summary judgment on the plaintiffs' tortious interference claims.

## II. SUMMARY JUDGMENT STANDARD

The general rules governing motions for summary judgment filed pursuant to Civ.R. 56 are well established. In *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47, the Supreme Court of Ohio stated the requirements that must be met before a Civ.R. 56 motion for summary judgment can be granted:

---

**3.** The original trustee was Society Bank. Its successor, Key Bank, took over as trustee. The court shall refer to both as "the trustee."

**4.** Case No. MS95–0081.

"The appositeness of rendering a summary judgment hinges upon the tripartite demonstration: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor.

"The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting a summary judgment."

A party who claims to be entitled to summary judgment on the grounds that a nonmovant cannot prove its case bears the initial burden of (1) specifically identifying the basis of its motion and (2) identifying those portions of the record that demonstrate the absence of a genuine issue of material fact regarding an essential element of the nonmovant's case. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274; see, also, *Dresher,* 75 Ohio St.3d at 299, 662 N.E.2d at 277–278 (Pfeifer, J., concurring in judgment only). The movant satisfies this burden by calling attention to some competent summary judgment evidence, of the type listed in Civ.R. 56(C), affirmatively demonstrating that the nonmovant has no evidence to support his or her claims. *Id.* Once the movant has satisfied this initial burden, the burden shifts to the nonmovant to set forth specific facts, in the manner prescribed by Civ.R. 56(E), indicating that a genuine issue of material fact exists for trial. *Id.* at 293, 662 N.E.2d at 273–274. Accord *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429–430, 674 N.E.2d 1164, 1170–1172; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 114–115, 526 N.E.2d 798, 800–802.

## III. DISCUSSION

### A. DECLARATORY JUDGMENT—VALIDITY OF THE THIRD AMENDMENT

The plaintiffs and Bishop each seek summary judgment as to the validity of the third amendment. Bishop seeks a declaration that the third amendment is a valid and enforceable amendment, and the plaintiffs seek a declaration that the document is invalid. The plaintiffs assert that the provisions in the Trust agreement governing amendment require that any modification to the Trust must be in writing, signed by the grantor, and delivered to the trustee in the grantor's lifetime in order for the amendment to be valid. There is no dispute that the third amendment was not delivered to the trustee until the day after the grantor's death.

 Generally, after the grantor has completed the creation of a trust, she is without rights, liabilities, or powers over the trust unless expressly provided for by the trust agreement. 1 Bogert, Trusts and Trustees (2 Ed.Rev.1984) 431,

Section 42. Thus, unless the grantor has retained the power, she may not modify or revoke the trust. *Id.* at 433; *id.*, Volume 10A (2 Ed.Rev.1983), at 218–219, Section 992. The grantor may modify or revoke a trust only in the particular manner specified in the trust agreement. *Natl. City Bank v. Barney* (Aug. 8, 1991), Cuyahoga App. No. 58886, unreported, 1991 WL 398721, citing *Magoon v. Cleveland Trust Co.* (1956), 101 Ohio App. 194, 199, 1 O.O.2d 126, 129, 134 N.E.2d 879, 882–883. If a particular mode is specified, that method must be strictly complied with in order for the modification to be effective. *Id.* at 200, 1 O.O.2d at 129–130, 134 N.E.2d at 883; *Barney, supra.* When the right is reserved and no particular method of modification is specified, "any mode sufficiently manifesting an intention of the trustor to revoke [or modify] is effective." [5] *Magoon,* 101 Ohio App. at 201, 1 O.O.2d at 130, 134 N.E.2d at 883.

It is well established that the interpretation of wills and trusts is a question of law for the court. *In re Estate of Davis* (1996), 109 Ohio App.3d 181, 183, 671 N.E.2d 1302, 1303. A court's primary purpose when construing will or trust provisions is to give effect to the intent of the testator or grantor when legally possible. *Domo v. McCarthy* (1993), 66 Ohio St.3d 312, 612 N.E.2d 706, paragraph one of the syllabus. When the content of the document is unambiguous, the intent of the grantor is to be derived from the plain language used. *Id.* at 314, 612 N.E.2d at 708–709. Where ambiguity exists or the grantor's intent is unclear, extrinsic evidence or rules of construction may be employed. *In re the Trust of U/W of Brooke* (Apr. 14, 1997), Preble App. No. CA96–10–017, unreported, 1997 WL 176143; *Domo,* 66 Ohio St.3d at 314, 612 N.E.2d at 708–709. However, when an ambiguity exists in a reserved power, "the Court will adopt that construction which will result in sustaining the questioned provision to the end that the intention of the [grantor] may be carried out." *Woodward v. Ameritrust Co.* (C.A.6, 1984), 751 F.2d 157, 161 (applying Ohio law), citing *Florance v. Mercantile Natl. Bank at Dallas* (Minn.App.1984), 343 N.W.2d 297, 302, affirmed in relevant part (Minn.1985), 360 N.W.2d 626.

In the present case, Article II of the trust agreement addresses the grantor's right to add to the Trust and other reserved rights. Section A permits additions to the Trust's corpus. Section B reserves certain rights and powers for

---

5. Additionally, a grantor must be free from disability (*e.g.,* incompetence) to establish a trust, otherwise the attempt is void or voidable. 1 Bogert at 447–448, Section 44. The same capacity is required to modify a trust, and the exercise of the reserved power is void when the grantor is under a disability. *Id.,* Volume 10A, at 241, Section 993. Thus, the power to modify may not be exercised by a representative when the principal is incompetent or deceased. *Id.; First Natl. Bank of Cincinnati v. Oppenheimer* (Hamilton C.P.1963), 23 O.O.2d 19, 24, 190 N.E.2d 70. The court makes reference to incompetence only to acknowledge the plaintiffs' claims that O'Grady was incompetent at the time of alleged execution of the third amendment. However, the court makes no finding on that issue.

the grantor and, of relevance here, sets forth a particular mode for modifying, amending, or revoking provisions of the trust agreement. In pertinent part, Article II reads as follows:

"ARTICLE II

"ADDITIONS TO THE TRUST AND RIGHTS RESERVED BY DONOR

"A. *The Donor* [O'Grady], or any other person or persons *may, either before or after the death of the Donor, increase or add to the principal* by gifts, devises, bequests, conveyances, transfers, assignments or deliveries of property, real or personal, to the Trustee to be held upon the trusts herein declared.

"B. *The following rights and powers are reserved by the Donor during the Donor's life* to be exercised by the Donor at any time or times without the consent or participation of the Trustee or any beneficiary thereof:

"1. *By an instrument in writing, signed by the Donor and delivered to the Trustee,* to revoke this agreement and the trusts herein created in whole or in part, to withdraw any property from the operation of this agreement, or *to modify, alter or add to this agreement in any respect whatever, including the right to change any beneficial interest hereunder* * * *.

"2. To add insurance proceeds * * *, to change any and all [insurance] policies, * * *. To receive or apply dividends * * *. To obtain * * * advances of loans * * * [and to exercise any right over the insurance policies that an ordinary policyholder normally may exercise]." (Emphasis added.)

The court finds that the language in Section B. and Subsection B.1., regarding modification, is plain and unambiguous. Delivery of any amendment/modification must be made during the grantor's lifetime in order for such a change to be valid. The opening grant-of-power clause of Section B. plainly permits the grantor to exercise the several powers reserved in Subsections B.1. and 2., without requiring consent or participation of the Trustee, at any time during her life. Then, Subsections B.1. and 2. specify the powers reserved. Among the reserved powers in Subsection B.1. is the power to modify the trust or change a beneficial interest. Subsection B.1. also clearly establishes three requirements for exercising these rights ( [1] a writing, [2] that is signed by the grantor, and [3] that is delivered to the Trustee), all of which must be completed at any time during her lifetime as required by the opening clause of Section B.

Bishop argues that the following language of Section B. expresses the grantor's intent to permit amendment of the Trust and delivery to the trustee at any time, even after death: " * * * to be exercised by the Donor at any time or times without the consent or participation of the Trustee or any beneficiary thereof * * *." He asserts that this phrase clearly signals O'Grady's intent to give effect to any amendment *drafted* during her lifetime or, at least, is ambiguous on

that point, thus militating in favor of validating the third amendment. See *Woodward,* 751 F.2d at 161.

However, it is well established that when construing contractual agreements like this trust agreement, courts are to give effect to all parts of a document by harmonizing potentially dissonant parts to effectuate the intentions of the parties as gathered from the whole instrument. *Ford Motor Co. v. Frazier & Sons Co.* (1964), 8 Ohio App.2d 158, 161, 29 O.O.2d 379, 380–381, 196 N.E.2d 335, 337–338. See, also, *Arnett v. Midwestern Ent., Inc.* (1994), 95 Ohio App.3d 429, 434, 642 N.E.2d 683, 686–687; *Kelly v. Cairns & Bros., Inc.* (1993), 89 Ohio App.3d 598, 607, 626 N.E.2d 986, 991–992. In reviewing the entire document, the court finds that O'Grady's plain intent in Article II., B. was that the reserved powers be exercised completely, but at any time, during her life without the consent of the trustee. This interpretation allows for the harmonization of the "exercise any time" language of Section B. with the "during the donor's life" requirement of Subsection B.1., and it is the obvious result when the requirements of Section B., and therefore Subsection B.1., are contrasted with the language employed by O'Grady in the preceding Section A. See above. In Section A., unlike in Section B., O'Grady clearly provided that additions to the Trust may be made "either before *or after* [her] death." (Emphasis added.) Thus, Section A. explicitly permits additions to be made after her death. The doctrine of *expressio unius est exclusio alterius*[6] requires the conclusion that, by clearly expressing approval of postdeath actions in Section A. while providing only for lifetime powers in Section B., the powers reserved in Section B. must be exercised and completed during the grantor's life.

In *Natl. City Bank v. Barney, supra,* the grantor used the following language when reserving the power to amend: "I reserve *the unrestricted right at any time or times* by a writing delivered to the trustee during my lifetime to modify * * * this trust * * *." (Emphasis added.) This language is similar to that employed by O'Grady. The *Barney* court found that the language indicated the grantor's intent to require predeath delivery of any modifications despite the reservation of the right to modify "at any time or times." Thus, the *Barney* case supports this court's conclusion that O'Grady intended to condition the exercise of any reserved right in Section B. on the use of the power during her life, and the exercise of any such power was permitted at any time during her lifetime without the consent of the trustee.

---

6. See Black's Law Dictionary (5 Ed.1979) 521 ("When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred."). See, also, *Helberg v. Natl. Union Fire Ins. Co.* (1995), 102 Ohio App.3d 679, 683, 657 N.E.2d 832, 834–835.

The court also notes that Ohio courts appear to have a preference for lifetime delivery when such language is employed in a trust agreement. See *Magoon*, 101 Ohio App. at 195, 1 O.O.2d at 127, 200–201, 129–130, 134 N.E.2d at 880, 883–884. In *Magoon*, the grantor reserved in himself "the power to alter or amend the disposition to be made of the trust estate * * *, any such revocation or modification to be evidenced by written instrument, signed by [the grantor], and *delivered to* the trustee."[7] (Emphasis added.) *Id.* at 195, 1 O.O.2d at 127, 134 N.E.2d at 880. The *Magoon* court concluded that the grantor "obviously mean[t]" that the three requirements were to be completed during his lifetime. *Id.* at 200–201, 1 O.O.2d at 129–130, 134 N.E.2d at 883–884. Thus, an attempted amendment by will, not delivered to the trustee during the grantor's life, was an ineffective amendment. As mentioned above, in *Natl. City Bank v. Barney*, the relevant provision of the trust agreement read: "I reserve the unrestricted right at any time or times by a writing *delivered to* the Trustee during my lifetime to modify, amend or revoke this trust * * *." (Emphasis added.) Similarly, in *Oppenheimer*, 23 O.O.2d at 20, 190 N.E.2d 70, according to the court, the grantor reserved the right to amend "by instrument in writing signed by the grantor and *delivered to* the trustee in the lifetime of the grantor." (Emphasis added.)

Bishop asserts that the placement of the words in the trust agreement here is important. He contends that the reservation language used the *Barney, Oppenheimer*, and *Woodward*[8] cases exhibits the unambiguous drafting necessary to require predeath delivery of a modification. He contends that O'Grady's failure to have the word "delivery" in closer proximity with the "during life" phrase, as in *Barney, Oppenheimer*, and *Woodward*, indicates an intent to allow postdeath delivery. However, this court finds that the fact that the grantors in these other cases employed different language to make their intentions clear about requiring lifetime delivery does not obscure the clarity behind O'Grady's linguistic formula that also expresses a plain intent to require predeath delivery.

Bishop also argues that Ohio does not have a lifetime-delivery requirement. Bishop cites *Davis*, 109 Ohio App.3d at 185, 671 N.E.2d at 1304, which is a case permitting postdeath delivery. *Davis*, however, is properly distinguishable. The reservation in *Davis* stated as follows: "I reserve the right, which I may exercise at any time during my life, to revoke this [trust] or, from time to time, to amend its terms, including the right to change the Trustees." Notably absent from the

---

7. The trust agreement in *Magoon* also permitted revocation/amendment upon consent of the probate court.

8. The reservation terms in *Woodward* read in pertinent part as follows: "Grantor further reserves the right to amend any provision of [the trust] at any time during her lifetime *by filing a written amendment* with the Trustee * * *." (Emphasis added.) *Woodward,* 751 F.2d at 158.

reservation was language requiring *delivery* in order for a modification to be effective. O'Grady expressly required delivery in her trust agreement, as did the grantors in *Barney, Magoon, Oppenheimer,* and *Woodward* ("filing" used rather than "delivering"). By omitting reference to "delivery," the grantor in *Davis* clearly expressed his intent to allow modification of his trust without lifetime delivery to the trustee of a change. Thus, the court finds that the *Davis* case does not call into question Ohio's preference for lifetime delivery when a reservation uses the term "deliver."

In *Hackley Union Natl. Bank v. Farmer* (Mich.1931), 252 Mich. 674, 234 N.W. 135, the Supreme Court of Michigan articulated an important and compelling purpose behind a predeath-delivery rule.[9] *Id.* at 678, 234 N.W. at 137. Similar to the language used by O'Grady in the instant trust agreement, the reservation in *Hackley* read in pertinent part as follows: "[T]his instrument * * * may be revoked by the donor at any time during his life, by instrument in writing signed and acknowledged by the donor and delivered to the trustee." The *Hackley* court concluded that the quoted language unequivocally expressed the donor's intent that delivery was to be accomplished during his lifetime. *Id.* at 677, 681, 234 N.W. at 136–137, 138.

"Delivery is not essential to complete a revocation unless made so by the parties in the trust agreement. What was the purpose in requiring it here? * * * It is a fair inference that, in requiring delivery, *the parties intended to establish the fact of revocation during the lifetime of the donor, to make sure the status of the trust at that time,* to cause a surrender of the instrument, if one were made, *so that some stranger or interested person could not give it vitality by an unauthorized delivery after his death.* Any act of surrender to the trustee that would put the original instrument of revocation beyond the owner's power to alter or to destroy would accomplish the purpose in requiring delivery." (Emphasis added.) *Id.* at 678, 234 N.W. at 137.

The caution expressed by the *Hackley* court is echoed by the court in *Northwestern Univ. v. McLoraine* (Ill.App.1982), 108 Ill.App.3d 310, 64 Ill.Dec. 50, 438 N.E.2d 1369, 1375–1376 (the purposes behind such a clause are to assure authenticity, be certain of donor intent, and inform and protect the trustee). The concerns expressed by the *Hackley* and *McLoraine* courts over authenticity and donor intent are precisely the problems that the plaintiffs claim Bishop created in this case.[10]

---

9. Cited with approval by the *Oppenheimer* court.

10. The court need not, and indeed does not, make a finding as to O'Grady's competence at the time of her alleged execution of the third amendment. The court makes reference to her competence only to highlight that the postdeath-modification problems anticipated by the *Hackley* and *McLoraine* courts are alleged here and can be avoided by following the settlor's unambiguous intent as to predeath delivery.

■ Bishop also makes two alternative arguments regarding the validity of the third amendment. He asserts that O'Grady constructively delivered the third amendment, and, if not, that the predeath-delivery requirement should be relaxed in this case. First, regarding constructive delivery, he asserts that the *Hackley* case acknowledges that delivery may occur after death, even when the trust agreement plainly requires lifetime delivery, when the grantor surrenders the document in such a way as to prevent a stranger or interested person from having control over it after the grantor's death. In *Hackley*, the grantor mailed an amendment to the trustee but died before the trustee received the changes. In that case, the court concluded that the mailing of the document was a sufficient surrender to satisfy the delivery requirement. *Id.*, 252 Mich. at 680–681, 234 N.W. at 137–138. In his affidavit, Bishop testifies that after he aided O'Grady in executing the third amendment, O'Grady told him to deliver the document to McCrory for delivery to the trustee. He contends that O'Grady's relinquishment of the third amendment to Bishop, accompanied by her instructions to ultimately deliver the instrument to the trustee, satisfies the lifetime-delivery requirement. The court disagrees. The constructive delivery permitted in *Hackley* requires that the surrender be total so that an interested party may not deliver an amendment without authorization after the donor's death. Here, the amendment is being challenged by the plaintiffs precisely because of Bishop's claimed undue influence over O'Grady when she lacked capacity to execute the changes. Thus, the court finds that the "constructive delivery" advocated here by Bishop was ineffective.[11]

■ Second, Bishop asserts that the lifetime-delivery requirement should be relaxed here as was done by the court in *In re Estate of Wood* (Cal.App.1973), 32 Cal.App.3d 862, 108 Cal.Rptr. 522. In that case, a grantor conditioned modification of a trust on lifetime delivery of any changes that might by made by his wife, the donee. The donee executed a change and then left the instrument with her attorney, who delivered it to the trustee after her death. In that case, unlike the instant case, there was no challenge to the authenticity of the changes, the intent of the donee, or her capacity. *Id.* at 883, 108 Cal.Rptr. at 535–536. Thus, the *Wood* court concluded that the postdeath delivery did not implicate the three purposes behind the predeath-delivery clause (authentication, donor's intent, and protection of the trustee). *Id.* Unlike the *Wood* case, the circumstances surrounding the third amendment are challenged in this case. Therefore, strict

---

**11.** See footnote 10, *supra.*

enforcement of the lifetime-delivery clause is proper here. See *Magoon*, 101 Ohio App. at 200, 1 O.O.2d at 129–130, 134 N.E.2d at 883.

Thus, based on the foregoing, the court finds that the trust agreement required lifetime delivery to the trustee of any amendment, and the delivery requirement of the trust agreement was not complied with as to the third amendment. Therefore, the court finds that the third amendment is invalid. Accordingly, the court shall grant the plaintiffs' motions for partial summary judgment and shall deny Bishop's motion on that issue. The court declares the third amendment invalid.

## B. TORTIOUS INTERFERENCE WITH GIFT/EXPECTANCY

Bishop has moved for summary judgment on the plaintiffs' claims of tortious interference with an expectancy. In their complaint, the plaintiffs claim that, as a result of Bishop's tortious conduct, each *"has been deprived of the bequest granted to [them]* by [O'Grady] under the Second Amendment, has been unable to use such money for scholarships for deserving [students of each] as requested [by O'Grady, and has] incurred significant legal expenses." [12] (Emphasis added.) (Lourdes Complaint para. 16; Catholic University Complaint para. 18; St. Michael's Complaint para. 20.) The plaintiffs' tortious interference claims are based on Restatement of the Law 2d, Torts (1979) 58, Section 744B, Intentional Interference with Inheritance or Gift ("Section 744B").

The Supreme Court of Ohio has recognized this cause of action.[13] *Firestone v. Galbreath* (1993), 67 Ohio St.3d 87, 88, 616 N.E.2d 202, 203. In doing so, the court found "particularly instructive" the language of Section 774B and Comment *d* to that section. The text of Section 774B reads as follows:

"One who by fraud, duress or other tortious means intentionally *prevents another from receiving* from a third person an inheritance or gift that *he would otherwise have received is subject to liability to the other for loss of the inheritance or gift."* (Emphasis added.)

In relevant part, Comment *d* reads as follows:

---

12. Each plaintiff uses virtually identical language.

13. Bishop contends that the *Firestone* case recognized only the tortious interference with an expectancy *of* inheritance. Thus, he contends that the tort applies only to interference with testamentary transfers and not gifts made through trusts. However, given that the *Firestone* court answered "affirmative" to the question of whether Ohio recognizes tortious interference with an "expectancy *or* inheritance" and that the court found "instructive" the restatement language recognizing the interference with "inheritance *or* gift," this court concludes that the cause of action is applicable to interference with a gift made through an *inter vivos* trust. See *Davison v. Feuerherd* (Fla.App.1980), 391 So.2d 799, 802 ("both wills and revocable trusts create expectancies"); *Firestone v. Galbreath* (C.A.6, 1994), 25 F.3d 323, 326.

"An important limitation upon the rule stated in this Section is that *there can be recovery only for an inheritance or gift that the other would have received but for the tortious interference of the actor * * *.*" (Emphasis added.)

Actual loss of the gift is required in order for the defendant to be subjected to liability. Section 774B; *Firestone*, 25 F.3d at 326, citing Keeton, Prosser & Keeton on Law of Torts (5 Ed.1984) 1007, Section 130. Thus, in order to recover, a plaintiff must show that the tortious act of the defendant actually prevented the plaintiff from receiving property that he or she otherwise would have received. See *McKibben v. Chubb* (C.A.10, 1988), 840 F.2d 1525, 1531. See, also, *Davison*, 391 So.2d at 802.

Because the court has determined that the third amendment is invalid, the court finds that the plaintiffs have suffered no actual loss of their gifts. Thus, Bishop is not subject to liability under the plaintiffs' tortious interference claims. See Section 774B; *Firestone*, 25 F.3d at 326; *McKibben*, 840 F.2d at 1531. Therefore, the court finds the plaintiffs' tortious interference claims to be moot. Accordingly, the court dismisses these claims.[14]

## JUDGMENT ENTRY

It is ORDERED that the motions for partial summary judgment filed by plaintiffs Lourdes College of Sylvania, Ohio, University of St. Michael's College, and Catholic University of America ("the moving plaintiffs") be granted. It is further ORDERED that defendant J. James Bishop II's motion for summary judgment be denied. It is further ORDERED that judgment be hereby granted in favor of the moving plaintiffs on the declaratory judgment claim presented in this action. It is further ORDERED and DECLARED that the purported third amendment to the trust created by Rita O'Grady is invalid. It is further ORDERED that the moving plaintiffs' claim is moot and therefore ORDERED dismissed with prejudice. The court finds that there is no just reason for delay.

*Judgment accordingly.*

---

14. The court notes that Bishop did not move for summary judgment on this basis. Rather, he moved for judgment on the first four of five elements of the cause of action listed by the Ohio Supreme Court. See *Firestone*, 67 Ohio St.3d at 88, 616 N.E.2d at 203. The court finds that genuine issues of material fact exist as to those elements, and, therefore, pursuant to *Mitseff*, 38 Ohio St.3d at 114–115, 526 N.E.2d at 800–802, the court shall deny Bishop's motion for summary judgment.