In re Application of East Ohio Gas Co. for Approval of
Emergency Curtailment Plan : Ohio Manufacturers'
Association, Appellant, *v.* Public Utilities Commission
of Ohio et al., Appellees.
Ohio Bakers Association, Appellant, *v.* Public Utilities
Commission of Ohio et al., Appellees.

[Cite as Ohio Manufacturers' Assn. v. Pub. Util.
Comm. (1976), 45 Ohio St. 2d 86.]

(Nos. 75-435 and 75-493—Decided February 11, 1976.)

*Messrs. Vorys, Sater, Seymour & Pease* and *Mr. Sheldon A. Taft,* for appellant Ohio Manufacturers' Association.

*Messrs. Eckhart & Durst* and *Mr. Henry W. Eckhart,* for appellant Ohio Bakers Association.

*Mr. William J. Brown,* attorney general, *Mr. Charles S. Rawlings* and *Ms. Cheryl K. Hachman,* for appellee Public Utilities Commission.

*Messrs. Jones, Day, Reavis & Pogue, Mr. H. Chapman Rose, Mr. Lanty L. Smith, Mr. John W. Edwards II* and *Mr. Robert W. Corp,* for appellee East Ohio Gas Company.

*Per Curiam.* The O. B. A. and the O. M. A. both assail the orders of the commission on the basis that they fail to set out adequate findings of fact and the reasons prompting the decisions. The O. B. A. asserts six other propositions of law, touching upon two basic issues.

One such issue is that the authority of the commission under R. C. 4909.16, with regard to energy emergencies, was preempted by the legislative creation of the temporary Energy Emergency Commission (E. E. C.), which, under Am. Sub. H. B. 206, came into existence on July 22, 1974, and was repealed effective December 31, 1975. The E. E. C. had authority to declare an energy crisis, to request proposed legislation thereon by the General Assembly, and to effect rules with the force of law to alleviate or manage such crisis. It could also direct the Public Utilities Commission to issue necessary orders to regulate the allocation of natural gas during a declared crisis, and to amend or suspend its rules. But Am. Sub. H. B. 206 did not repeal R. C. 4909.16, and the E. E. C. did not direct the commission to issue any orders with respect to the shortage of natural gas. That section of the Revised Code stands unrepealed.

The O. B. A. contends that the authority granted the commission by R. C. 4909.16 has been "pre-empted," because the E. E. C. has been granted overlapping authority. The contention is thus to the effect that R. C. 4909.16 has been repealed by implication. That contention is baseless, for the authority of the E. E. C. was in no way inconsistent

with that of the commission. By statute, the E. E. C. was empowered, in its discretion, to direct the enactment of emergency orders by the commission. The legislative grants of authority were not overlapping, they were hierarchical. A hierarchy of authority is not an inconsistency of authority, and certainly is no basis for the repeal of a statute by implication. See *O'Neil* v. *Board of County Commissioners* (1965), 3 Ohio St. 2d 53, 57, 209 N. E. 2d 393.

The second issue raised by the O. B. A., in five propositions of law, involves Commission Rule 27.06. Rule 27.06, adopted in 1920, provides a specific plan for curtailment of natural gas in the event of an emergency. Basically, this rule divides customers into two classes, domestic and industrial, and divides industrial customers into three subdivisions. The highest priority subdivison includes food production and processing plants, the second, users of gas engines, and the third, all other industrial customers. Under this plan, the bulk of industrial users would be subject to a pro-rata reduction in gas supply in an emergency, and would be deprived of service entirely before food processors and domestic users would be affected. A primary purpose of the ongoing commission investigations into natural gas supply has been to consider modification of this rule, but the rule has not been formally changed.

The curtailment plans ordered by the commission herein adopt instead the system of priorities established by the Federal Power Commission to govern allocations of natural gas to pipeline companies delivering gas interstate. F. P. C. Order No. 467-B (March 2, 1973), 38 F. R. 6384; F. P. C. Order No. 493 (September 21, 1973), 38 F. R. 27351. The F. P. C. plan is based upon the end-use of the gas. It is simliar to Rule 27.06, in that it accords highest priority to residential and small commercial users; but it differentiates industrial users with respect to the end use of the gas, the volume used, and the type of contract under which service is provided. Use of gas as boiler fuel and use under interruptible contracts are given lower priorities than other industrial uses, on the theory that these uses can be

switched to alternative types of fuel at relatively low cost.

The O. B. A. contends that Rule 27.06 should have been followed, and cites several reasons. It argues that the rule could only be amended by strict compliance with the procedure for promulgating and filing such rules under R. C. 111.15; that a written attorney-examiner's report should have been filed; that even if the present order is an emergency order under R. C. 4909.16, it is unreasonable and unlawful because there was no finding of fact that the nature or degree of the emergency was significantly different from that provided for by the rule; and that gas consumers have a property right to receive gas under Rule 27.06 which may not be taken away unless the Public Utilities Commission makes a finding that such action is reasonable and necessary in the interests of the public health, safety, and welfare.

Most of these propositions require only brief consideration. It is clear that the February 5th and 6th orders were emergency interim orders and, under R. C. 4909.16, the commission has authority to temporarily alter or amend an existing order affecting any public utility in case of emergency without following the procedures in R. C. 111.-15 for amendment of rules. Rule 27.06 is an order of the commission and is subject to such temporary alteration. See *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347, 359, 78 N. E. 2d 890. Such emergency orders under R. C. 4909.16 also do not require a written attorney-examiner's report, as the O. B. A. concedes. Finally, no authority is cited for the proposition that a class of consumers acquires a property right in a particular emergency allocation scheme which is to their benefit, nor is it likely that any authority could be cited.

The O. B. A.'s remaining proposition is that the commission acted unreasonably in that it failed in its orders to give adequate reasons for refusing to follow its own rule. That proposition is closely related to the contention urged by both the O. M. A. and the O. B. A., that the orders of the commission fail to state specific findings of fact supported by the record, and fail to state the reasons upon which the

conclusions in the commission's opinions and orders are based.

This court has, upon numerous occasions, emphasized the requirement of R. C. 4903.09, that orders of the commission specify findings of facts supported by the record and reasons prompting the decision. *Ideal Transportation Co.* v. *Pub. Util. Comm.* (1975), 42 Ohio St. 2d 195, 326 N. E. 2d 861; *Motor Service Co.* v. *Pub. Util. Comm.* (1974), 39 Ohio St. 2d 5, 313 N. E. 2d 803; *General Telephone Co.* v. *Pub. Util. Comm.* (1972), 30 Ohio St. 2d 271, 285 N. E. 2d 34; *Commercial Motor Freight* v. *Pub. Util Comm.* (1951), 156 Ohio St. 360, 102 N. E. 2d 842.

It is essential to the integrity of the administrative process, to judicial review of administrative action, and to the assurance of comprehension of agency orders by the parties and the public, that the reasons prompting such orders be explicitly stated. Based upon those considerations, it is apparent that the present orders are defective.

The February 5, 1975 order states, as findings of fact, that an emergency exists in Ohio with respect to the supply of natural gas; that East Ohio Gas would have a projected supply deficiency of approximately 26 billion cubic feet; that curtailment of East Ohio's customers was required as a matter of interim relief to meet the emergency; and that "[i]nterim relief is also necessary to preclude loss of gas in the future." The commission gives no reason for adopting the particular curtailment scheme it did, or for failing to follow its own Rule 27.06. An examination of the ten volumes of record makes that reason clear but it does not appear in the order itself.

There was abundant testimony in the record to establish that the federal allocation scheme is a reasonable method of allocation and is superior to Rule 27.06 in insuring maximum future interstate deliveries of gas. The failure to conform curtailments of Ohio customers to the federal allocation scheme would mean that in the event of future shortages, Ohio utilities would receive unnecessarily reduced deliveries of interstate gas. Since the great bulk of the gas consumed in Ohio is delivered interstate, the

result could be to worsen an already severe shortage of available gas. Plainly, this is a compelling reason for adopting the federal allocation scheme, as the commission did in this case. The difficulty is that the commission failed to state that reason in its orders.

Ordinarily, such a defect would require that the orders of the commission be reversed. However, as pointed out above, the actual reason underlying the orders is clear. The commission alludes to that reason briefly in its February 5th order, in stating that the interim order was "necessary to preclude loss of gas in the future." In the public hearings upon the proposed orders, that fact was plainly established. Further, the details of the February 5th order demonstrate that the commission did give careful consideration to the other issues raised at those hearings, and consequently modified the proposed allocation scheme in order to assure supplies for such vital needs as food processing and for such vital institutions as hospitals.

Under these particular circumstances, it appears to this court that the failure to specify the reasons for adopting these interim orders, and for not following commission Rule 27.06, amount to a technical defect in otherwise reasonable and necessary orders. R. C. 4905.09 provides that an order under R. C. Chapter 4903, such as the present ones, "shall not be declared inoperative, illegal, or void for an omission of a technical nature * * *."

Under the facts of this case, we find that the interim orders of the commission in this case substantially comply with the statutory requirements for emergency orders, and that the failure to adequately specify the reasons prompting the orders constitutes an omission of a technical nature, which does not render the orders illegal or void. The orders, being neither unreasonable nor unlawful, are therefore affirmed.

*Orders affirmed.*

O'NEILL, C. J., STERN, CELEBREZZE and W. BROWN, JJ., concur.

HERBERT and P. BROWN, JJ., concur in the judgment.

CORRIGAN, J., dissents.