GENERAL MOTORS CORPORATION, APPELLANT, *v.* PUBLIC UTILITIES COMMISSION OF OHIO, APPELLEE.

(No. 77-1466—Decided June 14, 1978.)

360

*Messrs. Bell & Clevenger, Mr. Langdon D. Bell* and *Mr. Samuel C. Randazzo,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Marvin I. Resnik* and *Mr. Kevin F. Duffy,* for appellee.

*Per Curiam.* R. C. 4909.16 provides, in pertinent part, as follows:

"When the public utilities commission deems it necessary to prevent injury to * * * the public * * * in case of any emergency to be judged by the commission, it may temporarily alter, amend, or, with the consent of the public utility concerned, suspend any existing rates, schedules, or order

relating to or affecting any public utility or part of any public utility in this state. * * *"

This statute allows the commission, in response to a natural gas shortage, to authorize and approve curtailment plans which allocate the available supplies of natural gas among existing customers. *Ohio Manufacturers' Assn.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 86; *Inland Steel Development Corp.* v. *Pub. Util. Comm.* (1977), 49 Ohio St. 2d 284.

Appellant argues that although the commission had authority, under the emergency provision of R. C. 4909.16, to grant additional volumes of gas to the grain-dryers for the remainder of the 1977 summer season, the commission could not so modify the existing curtailment plan absent a showing, by the applicants, of extraordinary conditions. In addition, appellant contends that by updating the grain-dryers' base periods, and by permitting summer to winter carryovers, the commission permanently modified the existing curtailment plan. Appellant urges that such permanent relief is not authorized under R. C. 4909.16.

It is the commission's position that the emergency condition which necessitated the original curtailment plan is the ongoing natural gas shortage, and that throughout the duration of the supply crisis it may modify curtailment plans as the need to do so arises. In response to appellant's second argument, the commission points out that curtailment plans established under R. C. 4909.16 will exist only as long as the nautral gas emergency prevails. The commission contends, in effect, that since the original curtailment plan is temporary in nature so too is the plan as modified by the instant order.

The evidence of record indicates that the commission acted reasonably and lawfully in granting the applicants extraordinary relief for the summer of 1977.* Moreover,

---

*Indeed, appellant has not shown that the immediate relief granted for the summer of 1977 had an adverse effect upon it or other industrial customers, since the total amount of additional gas made available to the grain-dryers was approximately one tenth of one percent of Columbia's summer industrial base volume allocation.

the approval by the commission of the summer to winter carryover was appropriate, in view of the fact that the grain-drying industry is not easily accommodated by Columbia's established supply seasons. Finally, we hold that the updating of the base period allocations was reasonable in light of the fact that the prior base period appeared to be unrepresentative, and because growth had occurred in the grain-drying industry during the intervening years. The commission, although reluctant to modify curtailment plans to facilitate growth in other industries, has recognized that the production of food is a vital function which is traditionally given a high priority.

Appellant's arguments would have the effect of depriving the commission of the flexibility necessary to deal with the manifold problems emanating from the continuing natural gas shortage. They must therefore be rejected.

The commission's order, being neither unreasonable nor unlawful, is hereby affirmed.

*Order affirmed.*

O'NEILL, C. J., HERBERT, CELEBREZZE, W. BROWN, STEPHENSON, SWEENEY and LOCHER, JJ., concur.

STEPHENSON, J., of the Fourth Appellate District, sitting for P. BROWN, J.