RANFT, APPELLEE AND CROSS-APPELLANT, *v.*
COLUMBIA GAS OF OHIO, INC., APPELLANT AND CROSS-APPELLEE.

[Cite as Ranft *v.* Columbia Gas of Ohio, Inc. (1984), 12 Ohio St. 3d 18.]

(No. 83-874—Decided July 3, 1984.)

*Messrs. Lucas, Prendergast, Albright, Gibson & Newman, Rankin M. Gibson Co., L.P.A.,* and *Mr. Rankin M. Gibson,* for appellee and cross-appellant.

*Messrs. Porter, Wright, Morris & Arthur, Mr. Rudolph Janata, Mr. Craig D. Barclay, Mr. Thomas E. Morgan, Mr. James L. Fullin* and *Mr. James R. Berendsen,* for appellant and cross-appellee.

DAHLING, J. The appellant asserts in his first proposition of law that where performance, under a right-of-way agreement, which provides the owner of the fee a right to natural gas service, has been temporarily prohibited by an emergency Public Utilities Commission order, the agreement is still in force, though dormant, and such an emergency order constitutes a complete defense to an action arising out of the contract or for the rescission thereof. We find this proposition of law to be meritorious.

The record reflects that the appellee's predecessors in title, granted and conveyed the right-of-way easements in 1964. The right-of-way easement agreements provide in pertinent part: "While gas is conveyed through said premises, Grantors, their heirs and assigns, shall have the right to purchase gas for use on said premises, subject to the Company's rules and regulations * * *."

In 1971 a proceeding was initiated by the Public Utilities Commission of Ohio entitled: "In the Matter of the Investigation of Supply of Natural Gas within the State of Ohio." Public hearings were held pursuant to law and, on February 16, 1972, the commission issued an interim order. The order concluded that, "in general, an adequate supply of gas to meet the demands of Ohio customers in 1972 is *not* assured. In order to assure same, restrictions upon new customers and upon customers contemplating substantial increases should be imposed."

On June 23, 1972 the commission issued an interim supplemental emergency order which stated: "Columbia of Ohio and Ohio Valley may refuse all applications for new service at new premises regardless of intended use, *provided,* however, gas service shall be supplied to a) any applicant as to whom a written commitment for service has been made by either company prior to the date of the instant supplemental interim order, * * *."

On August 1, 1975 the appellant filed an application to clarify policies relating to gas restrictions. On February 18, 1976 the commission ordered:

"*ORDER:*

"It is, therefore,

"ORDERED, That Columbia Gas of Ohio, Inc., be, and hereby is, authorized to defer, for a period of eighteen months commencing March 1, 1977, or until the Commission determines that the gas supply emergency has ended, should that occur before the end of the eighteen month period, all applications for new service pursuant to pipeline right of way agreements containing tap provisions, unless the persons making application are ready to receive full service on or before March 1, 1977. It is, further,

"ORDERED, That any new gas service provided pursuant to pipeline right of way agreements with tap provisions be limited to service classified as residential. It is, further,

"ORDERED, That Columbia limit any new gas service provided pursuant to such right of way agreements to one tap, if the instrument granting the right to the tap does not provide for a specific number of taps. * * *'"

In October 1976 the appellee applied for gas service relying on the terms of the right-of-way agreement. The appellee sought gas service for a proposed commercial use. On November 5, 1976 the appellant rejected the appellee's application for gas service. The present lawsuit was filed on May 23, 1977.

Proper application of the law set out in *Inland Steel Dev. Corp.* v. *Pub. Util. Comm.* (1977), 49 Ohio St. 2d 284 [3 O.O.3d 435], is dispositive of the primary use presented in appellant's proposition of law. The court at 287 stated:

"R.C. 4909.16 reads, in pertinent part:

" 'When the Public Utilities Commission deems it necessary to prevent injury to * * * the public * * * in case of any emergency to be judged by the commission, it may temporarily alter, amend, or, with the consent of the public utility concerned, suspend any existing rates, schedules, or order relating to or affecting any public utility or part of any public utility in this state. * * *'

"This section authorizes the commission, during the existence of natural gas supply shortages, to promulgate emergency orders prohibiting gas utilities from supplying new or additional volumes of gas to either present or prospective customers and authorizing gas utilities to curtail deliveries to their existing customers. *Ohio Manufacturers' Assn.* v. *Pub. Util. Comm.* (1976), 45 Ohio St. 2d 86 [74 O.O.2d 197]; *Akron* v. *Pub. Util. Comm.* (1948), 149 Ohio St. 347 [37 O.O.39].

"This court has recognized that individual contracts between a public utility and its customers may be affected where such action is reasonably necessary to protect the public health, safety and welfare. As stated by this court in paragraph four of the syllabus in *Akron* v. *Pub. Util. Comm., supra*:

" 'The provisions of the state and federal constitutions, inhibiting laws impairing the obligation of contract, do not affect the power of the state to protect the public health or the public safety. The rights and privileges aris-

ing from contract are subject to regulations for the purposes stated in the same sense and to the same extent as is property owned by natural persons or by corporations.' "

While it is true that the appellee suffered a temporary inconvenience and impairment of a contract right, the injury must be viewed within the context of the natural gas shortages which haunted the public-at-large during the period of the complaint. The court realizing the appellant's position should have found that compliance with the commission's orders constituted a complete defense to the suit of the appellee.

The appellant's primary contention in its second proposition of law is that the court should not punish a public utility for obeying a lawful order of the Public Utilities Commission. This proposition of law too has merit. The orders of the commission, upon which the appellant relied in denying the gas service application of the appellee, were promulgated pursuant to R.C. 4909.16. That section states:

"When the public utilities commission deems it necessary to prevent injury to the business or interests of the public or of any public utility of this state in case of any emergency to be judged by the commission, it may temporarily alter, amend, or, with the consent of the public utility concerned, suspend any existing rates, schedules, or order relating to or affecting any public utility or part of any public utility in this state. Rates so made by the commission shall apply to one or more of the public utilities in this state, or to any portion thereof, as is directed by the commission, and shall take effect at such time and remain in force for such length of time as the commission prescribes."

The appellant's duty to follow orders promulgated under R.C. 4909.16 is prescribed under R.C. 4909.41. That section states:

"No officer, agent, or employee in an official capacity of a public utility shall knowingly violate sections 4909.15 to 4909.19, inclusive, or 4909.33 to 4909.40, inclusive, of the Revised Code, or willfully fail to comply with any lawful order or direction of the public utilities commission made with respect to any public utility. Each day's continuance of such failure is a separate offense."

R.C. 4909.99 stated at the times pertinent herein as follows:

"(A) Whoever violates section 4909.14 of the Revised Code shall be fined not more than one thousand dollars or imprisoned not less than one nor more than two years, or both.

"(B) Whoever violates section 4909.41 of the Revised Code shall be fined not less than one hundred nor more than one thousand dollars or imprisoned not less than one or more than two years, or both."

Essentially, it is inequitable to require the appellant to risk felony prosecution for failure to obey commission orders in order to comply with the terms of a private contract. As addressed in the first proposition of law, compliance with a proper commission order constitutes a complete defense to the appellee's contract action.

With respect to the cross-appeal submitted by the appellee, the cross-appellant contends that he is entitled to an accounting and receipt of a portion of the profits accrued by the cross-appellee by reason of the use of his land. Additionally, the cross-appellant seeks a damage award for all consequential losses flowing from the alleged breach of the easement contract.

Both of the contentions of the cross-appeal are without merit. Again, as addressed in the resolution of the propositions of law contained in the primary appeal, the compliance by the cross-appellee with the lawfully promulgated orders of the commission operates as a complete defense to the contract action of the cross-appellant.

The judgment of the court of appeals is affirmed in part and reversed in part, and final judgment is entered for appellant.

*Judgment accordingly.*

CELEBREZZE, C.J., FORD, LOCHER, HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

FORD, J., of the Eleventh Appellate District, sitting for W. BROWN, J.

DAHLING, J., of the Eleventh Appellate District, sitting for SWEENEY, J.