[Cite as *WesBanco, Inc. v. Blair*, 2012-Ohio-2337.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

WESBANCO, INC.                                    :

     Plaintiff-Appellee                      :               C.A. CASE NO.    2011 CA 90

v.                                                        :               T.C. NO.    08CV1192

JUDY A. BLAIR, etc., et al.                     :                  (Civil appeal from
                                                                       Common Pleas Court)

     Defendant-Appellant                   :


                                                        :


        . . . . . . . . . .

**O P I N I O N**

Rendered on the ____25th____ day of ____May____, 2012.

        . . . . . . . . . .

RICHARD HEIL, Atty. Reg. No. 0033661, One S. Limestone Street, Suite 800, Springfield, Ohio 45501
     Attorney for Plaintiff-Appellee, Wesbanco, Inc.

JAMES BERRY, Atty. Reg. No. 0024082, 10 W. Columbia Street, P. O. Box 1885, Springfield, Ohio 45501
     Attorney for Defendant-Appellee, Estate of Charles E. Anway

ROBERT ANWAY, 3500 E. McKinney Street, #2108, Denton, Texas 76201
     Defendant-Appellant

        . . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the pro se Notice of Appeal of Robert J. Anway, filed November 22, 2011.  Anway appeals from the trial court's Entry of October 19, 2011, which denied his motion for declaratory judgment, in which Robert asked the court to determine that the last Will and Testament executed by his father, Charles E. Anway, on July 30, 2007, revoked or amended the September 29, 1999 Anway Family Trust ("Trust") and thereby appointed Robert as first successor trustee of the Trust, in lieu of Judy A. Blair, and further eliminated Judy as a beneficiary under the Trust.  For the reasons that follow, we affirm the judgment of the trial court.

{¶ 2}    On October 4, 2011, Robert filed his pro se "Petitioner's Motion for Declaratory Judgment Order of Appointment to Successor Trustee of Anway Family Trust and of Estate of Charles E. Anway, to Carryout (sic) his Wishes," in which he alleged that he "should have been considered and appointed" as the first successor trustee under the Trust, instead of Judy, as a matter of law.  According to Robert, Charles and Judy used to live together, but their relationship ended shortly before Charles' death.  Robert asserted that Charles reserved the right to amend or revoke the Trust, and that he did so when he executed his Will.  Robert's affidavit, and copies of the Trust and Charles' Will are attached to the motion.

{¶ 3}    The trial court's Entry denying the motion provides that, while Article 2.6 of the Trust states that Charles may revoke the Trust at any time, the Trust "does not expressly allow the trust to be revoked or amended by a will or codicil," and that pursuant to R.C. 5806.03(C) (sic), Charles' Will had no legal effect on the Trust and Judy remains first

successor trustee and "must carry out the trust in compliance with the terms set out in the said trust."

**{¶ 4}** We note that Article One of the Trust, entitled "Declaration of Trust," identifies Charles as the "Settlor/Trustee" and "Lifetime Beneficiary," and that it identifies Robert, Jeffery B. Anway, who is Robert's brother, and Judy as "Remainder Beneficiaries" and "Successor Trustees." It further provides:

> 1.2 Optional Establishment of irrevocable Trust for holding Real Estate: The other provisions of this trust notwithstanding, real estate and the proceeds therefrom and other specific personal property of the settlor may alternatively be held irrevocably in this trust subject to a retained lifetime interest of the settlor, under the provisions of Article Eight of this trust (Irrevocable Real Estate Trust Article). Any real property which is scheduled on the "Schedule of Real Property Irrevocably Held per Trust Article Eight," which is attached to this trust and therein incorporated by reference, or other real or personal property which the settlor otherwise designate in writing to be governed under Article Eight, shall irrevocably be subject to the provisions of Article Eight, from the date of their inclusion on said Schedule or date of said writing. If property is not listed on the above described "Schedule of Real Property Held Irrevocably per Trust Article Eight" or otherwise designated in writing by the settlor to be governed under Article Eight, the provisions of Article Eight shall not apply to said property, and said property, shall then be subject to all of the other provisions of this

trust.

**{¶ 5}** Article Two, entitled "Trust During the Life of Charles E. Anway," provides as follows:

2.6 Revocation During Settlor's Life: Charles E. Anway may at any time revoke this trust including the separate trust estate in whole or in part (except as provided in § 1.2).

2.7 Amendment During the Settlor's Life: Charles E. Anway may at any time amend any of the terms of this trust by a written document included in this trust or by changes indicated on the face of the trust document and initialed.

**{¶ 6}** Article Three is entitled "Trust at Settlor's Death" and Articles 3.3 and 3.4 provide:

3.3 Specific Distributions: The trustee shall distribute the specified gifts to the following per stirpes:

3.3.1 Rose C.   McCaffree

3.3.1.1 Ten Thousand ($10,000) Dollars outright and free of trust.

3.4   Allocation of Trust Estate: The successor trustee shall distribute and allocate the remainder of the trust estate, outright and free of trust, following distribution of Specific Distribution (§ 3.3), to the following, in equal shares per stirpes.

3.4.1 Robert J.   Anway

   3.4.2 Jeffery (sic) B. Anway

   3.4.3 Judy Blair

**{¶ 7}**  Article 8 is entitled "Irrevocable Real Estate Trust," and it provides:

   8.1 Introduction - Article Eight Property

   8.1.1. The trustee shall hold, administer, and distribute all real estate, which is now or in the future, scheduled on the "Schedule of Real Property Held Irrevocably per Article Eight," which is attached to this trust and herein incorporated by reference, and such other real or personal property as may at a later time be specifically designated by the Settlor, in writing, to be held, administered, and distributed under the provisions of this Article. Said property shall be hereinafter known as "Article Eight Property." Provisions of this Article shall apply only to Article Eight Property from the date on which said "Article Eight Property" is placed on said "Schedule of Real Property Held Irrevocably per Article Eight," or the date on which said property is otherwise designated in writing as Article Eight Property by the settlor. With respect to Article Eight Property; the trustee shall apply the provisions of other articles of this Anway Family Trust to the extent that they are consistent with Article Eight, however, the trustee shall resolve any conflicts between the provisions of Article Eight and provisions of other articles of this trust in favor of the provisions in Article Eight. The provisions of this Article shall not apply to other real estate or other personal

property held in trust by the trustee under other articles of this Anway Family Trust.

**{¶ 8}**     Article 8.3.8 provides:

Upon the death of the settlor the Article Eight Property shall be distributed outright and free of trust, to the following beneficiary(ies), hereinafter known as "Remainder Beneficiary(ies)," in equal shares, per stirpes, as designated in § 3.4 of this trust:

8.3.8.1 Robert J. Anway

8.3.8.2 Jeffery (sic) B. Anway

8.3.8.3 Judy A.   Blair

**{¶ 9}**     Article 8.3.9 provides:

The settlor, reserves the limited power to amend or to change the above remainder beneficiary(ies) in this Article and their respective percentages, among the following classes through a writing contained as part of the settlor's Last Will & Testament, or as a provision of the settlor's Living Trust, which becomes operative at the settlor's death:

8.3.9.1 The settlor's children or grandchildren, either natural or adopted.

8.3.9.2 The settlor's brothers, sisters, nieces, or nephews.

8.3.9.3 Any charities which have achieved recognition as a qualified charity under Section 501(c)(3) of the Internal Revenue Code of the United States.

The provision of this Article notwithstanding, this limited power to amend or change the beneficiary(ies) shall be personal to the settlor and any not exercised in favor of the settlor, creditor(s) of the settlor, the estates of the settlor, or creditors of the settlor's estate.

{¶ 10} Attached to the Trust is the "Schedule of Real Property Held Irrevocably Per Trust - Article Eight." The Schedule is blank and no property is listed thereon.

{¶ 11} Charles' Will provides in relevant part:

ITEM II: I hereby give, devise and bequeath the sum of Ten Thousand Dollars ($10,000.00) to my daughter, Rosa Colleen, of Kelso, Washington.

ITEM III: The rest and residue of my estate, be it real, personal or mixed, and wherever situate, I hereby give and devise to my sons, Robert Joseph Anway and Jeffrey Brian Anway, equally share and share alike, per stirpes.

{¶ 12} We note that on March 26, 2010, this Court issued a Show Cause Order directing Judy to file a brief or show cause why the matter should not be submitted to this Court, and on April 4, 2010, Judy filed a response that provides that she "does not desire legal representation in this matter and will not respond to the Appellate filing of Robert Anway."

{¶ 13} In his brief, Robert does not set forth specific assignments of error as required by the Appellate Rules, but rather he enumerates multiple "arguments." According to Robert, it was Charles' intention that Judy be "removed as heir or trustee" of the Trust.

Robert again asserts that Charles revoked or amended the Trust by means of his Will, and that Judy accordingly is no longer a beneficiary under the Trust.

{¶ 14} Robert relies upon the language of Article 8.3.9 above and further directs our attention to *In re Estate of Davis,* 109 Ohio App.3d 181, 671 N.E.2d 1302 (Twelfth Dist. 1996). In *Davis*, Charles Davis executed a trust in 1987 which provided in part that he reserved the right, during his life, to revoke his trust or amend its terms. The trust further directed the trustee to distribute specific amounts of money to a local organization and charity, and the residue to his wife, unless she predeceased him. In that event, the trustee was to distribute the residue to Davis' nieces and nephews. In 1991, Davis and his wife separated, and in 1992, he executed a will that directed his executor to distribute greater amounts of money to the local organization and charity than set forth in the trust. The will further addressed the trust in the residuary clause as follows: "Item V. All the rest, residue and remainder of my property * * * , which I may own or have the right to dispose of at the time of my decease, including the principal and undistributed income contained in [the] Trust * * * [shall] be divided into seven equal portions which I give, bequeath and devise as follows to [seven named] nieces and nephews * * *." Davis died in 1994.

{¶ 15} After the probate court held a hearing to determine whether Davis' will revoked, amended or failed to alter the trust, the referee determined that the "residuary clause in the decedent's will revoked the trust." *Id.*, 183. Davis' wife appealed. The Twelfth District initially noted as follows:

> The interpretation of wills, including the intent of the testator, is a
> question of law, * * * and therefore is subject to independent appellate

review. *Ohio Bell Tel. Co. v. Pub. Util. Comm.* (1992), 64 Ohio St.3d 145, 147, 593 N.E.2d 286, 287.

A settlor has the right to reserve power to revoke or amend a trust. R.C. 1335.01[1]; *Magoon v. Cleveland Trust Co.* (1956), 101 Ohio App. 194, 198, 1 O.O.2d 126, 128-129, 134 N.E.2d 879, 882. If the settlor retains a restricted power to revoke or amend during his life, the revocation or amendment is valid only if it takes effect before the death of the settlor. *First Nat'l. Bank of Cincinnati v. Oppenheimer* (P.C. 1963), 23 O.O.2d 19, 23, 190 N.E.2d 70, 73-74.

* * *

The general rule is that a will is ambulatory and does not take effect until the testator's death. *Id.* at 23, 190 N.E.2d at 73. An exception exists, however, stating that a will can operate as an *in praesenti* instrument capable of revoking or amending a revocable trust during the life of the settlor where the settlor uses language which appropriately manifests an intention to do so. *Id.* at 23, 190 N.E.2d at 74.

{¶ 16} The Twelfth District determined that Davis did not revoke the trust but rather amended it by means of his will, since Davis:

executed a will several months after becoming separated from appellant which specifically refers to the trust, names the trustee and notes the trust's account number. The will does not use the word "revoke" in

---

[1]Former R.C. 1335.01 governed the creation of inter vivos trusts and

connection with the trust, or repeat the distribution directions of the trust's terms. Instead, the will alters the terms of disposition of the trust assets, directing that the trust assets be distributed to different beneficiaries in different amounts than the original trust terms had directed. *Id.,* at 184-85.

{¶ 17} While we agree that *Davis* allows a settlor to revoke or amend a trust by a last will and testament, Robert overlooks the plain language of R.C. 5806.02 (incorrectly cited as R.C. 5806.03(C) by the trial court) which provides:

(C) The settlor may revoke or amend a revocable trust by substantial compliance with a method provided in the terms of the trust or, if the terms of the trust do not provide a method, by any method manifesting clear and convincing evidence of the settlor's intent, provided that a revocable trust may not be revoked or amended by a will or codicil, regardless of whether it refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust unless the terms of the trust expressly allow it to be revoked or amended by a will or codicil

{¶ 18} By its express language, the Will does not purport to amend (as in *Davis)* or revoke the Trust, and Article Two does not expressly allow for amendment or revocation of the Trust by will or codicil. Article Eight of the Trust, upon which Robert relies, only applies to the property listed in the "Schedule of Real Property," and none is listed thereon. The trial court correctly found that the Will did not alter the terms of the Trust. Accordingly, the judgment of the trial court is affirmed.

---

concerned protections of creditors as against fraud of the settlor.

. . . . . . . . . .

GRADY, P.J. and HALL, J., concur.

Copies mailed to:

Richard Heil
James Berry
Robert Anway
Hon. Douglas M. Rastatter