[Cite as *In re Estate of Zoltanski v. Zoltanski*, 2020-Ohio-3908.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

| | |
|---|---|
| In re Estate of Edward F. Zoltanski | Court of Appeals No. WD-19-054 |
| | WD-19-055 |
| Stephen Zoltanski | WD-19-056 |
| Appellant/Cross-Appellee | Trial Court Nos. 2015 1425A |
| | 2015 1425C |
| v. | 2015 1425D |
| Helen Zoltanski, et al. | **DECISION AND JUDGMENT** |
| Appellee/Cross-Appellant | Decided: July 31, 2020 |

* * * * *

Kevin A. Heban, R. Kent Murphree and John P. Lewandowski,
for appellant/cross-appellee.

Daniel F. Zigray and Richard Kolb, for appellee/cross-appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} This is a consolidated appeal from three judgments of the Wood County Court of Common Pleas, Probate Division, for separate aspects of the decedent's estate. For the reasons set forth below, this court affirms, in part, and reverses, in part, the judgments of the probate court.

{¶ 2} According to the record, Edward F. Zoltanski died on August 21, 2015, at the age of 89, survived by nine adult children. The decedent's estate contained many assets, including four apartment complexes operated, in part, with corresponding bank accounts disputed in these appeals. The probate of the decedent's estate commenced on October 27, 2015, as case No. PE 2015-1425. Five separate lawsuits by the decedent's children ensued surrounding the probate of the decedent's estate, each designated with case No. PC 2015-1425 and suffixes of A through E. The second complaint, case No. PC 2015-1425-B, was voluntarily dismissed without prejudice prior to any determination by the probate court. The probate court's decision for the fifth complaint, case No. PC 2015-1425-E, was not appealed by any party.

{¶ 3} The first probate complaint, case No. PC 2015-1425-A, was filed on February 17, 2017, by decedent's son, Stephen Zoltanski (hereafter "Stephen"), against the Stephen's eight siblings: Helen, Thomas, Monica, Peter, Mary, Joan, Cecelia, and Teresa Zoltanski. Stephen alleged claims for R.C. 5804.15 reformation of a revocable trust for a 4-unit apartment complex known as "Wood Bird" (Count 1) and to impose a constructive trust due to fraud on the trust that legally owns Wood Bird (Count 2). Following a period of discovery, four of the defendant siblings, Helen, Monica, Peter and Mary Zoltanski, filed a motion for summary judgment. On March 27, 2019, the probate court granted summary judgment on Count 1, and deferred summary judgment on Count 2 for additional briefing. On April 22, 2019, the probate court denied summary judgment on Count 2, which proceeded to a bench trial that commenced on May 13,

2.

2019. By judgment entry journalized on June 21, 2019, the probate court determined Stephen failed to establish by clear and convincing evidence his entitlement to a constructive trust. Stephen Zoltanski appealed that decision on July 19, 2019, which was assigned case No. WD-19-054.

{¶ 4} The third probate complaint, case No. PC 2015-1425-C, was filed on August 18, 2017, by Helen, Monica, Peter and Mary Zoltanski against the other five siblings: Stephen, Thomas, Joan, Cecelia, and Teresa Zoltanski. The plaintiffs alleged 17 causes of action. Stephen answered and counterclaimed for reformation relief. These matters proceeded to a bench trial that commenced on May 13, 2019. By judgment entry journalized on June 21, 2019, the probate court determined plaintiffs failed to establish by clear and convincing evidence the decedent lacked the necessary capacity, or was subject to undue influence, to execute the subject instruments, or that certain amendments to instruments lacked specificity. The probate court also denied the plaintiffs' requests for constructive trust relief and Stephen's request for reformation relief. Stephen Zoltanski appealed that decision on July 19, 2019, which was assigned case No. WD-19-055.

{¶ 5} The fourth probate complaint, case No. PC 2015-1425-D, was filed on August 18, 2017, by Helen Zoltanski (hereafter "Helen") against Stephen Zoltanski and Huntington Bancshares, Inc. (hereafter "Huntington Bank"), generally alleging conversion, self-dealing, breach of fiduciary duty, and negligence over decedent's banking assets. The defendants answered and filed various cross-claims and

3.

counterclaims among the parties. On March 27, 2019, the probate court denied summary judgment motions separately filed by Helen and by the bank. A bench trial commenced on May 13, 2019. By judgment entry journalized on June 21, 2019, the probate court determined Stephen wrongfully converted, and breached his fiduciary duties, for most of decedent's bank assets and awarded damages. The probate court denied all remaining claims by Helen, Stephen and Huntington Bank. Helen appealed that decision on July 19, 2019, then Stephen cross-appealed on July 23, 2019, and both appeals were assigned case No. WD-19-056. Helen filed her appellate brief identifying one assignment of error on September 13, 2019.

{¶ 6} On October 1, 2019, this court consolidated case Nos. WD-19-054, WD-19-055, and WD-19-056 and designated Stephen as appellant/cross-appellee and Helen as appellee/cross-appellant.

{¶ 7} Stephen sets forth three assignments of error:

I. The trial court committed error by granting Appellee/Cross-Appellant's Motion for Summary Judgment Concerning Count 1, Trust Reformation.

II. The trial court committed error by not imposing a constructive trust upon certain real estate ("[Wood Bird]") for the benefit of Appellant/Cross-Appellee.

III. The trial court committed error by awarding the ownership interest in certain Huntington Bank accounts to Appellee/Cross-Appellant.

4.

**{¶ 8}** Helen sets forth one assignment of error:

I. The trial court erred in holding that plaintiff was required to name Fifth Third Bank as a necessary party to this action.

## I. Summary Judgment

**{¶ 9}** We review de novo the probate court's summary judgment determinations, employing the same Civ.R. 56 standard as trial courts. *Chalmers v. HCR ManorCare, Inc.*, 6th Dist. Lucas No. L-16-1143, 2017-Ohio-5678, ¶ 21; *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29.

**{¶ 10}** "The main purpose of the summary judgment statute is to enable a party to go behind allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Cunningham v. J. A. Myers Co.*, 176 Ohio St. 410, 413, 200 N.E.2d 305 (1964) (evaluating former R.C. 2311.041(D), now Civ.R. 56).

**{¶ 11}** Summary judgment may be granted only:

if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law * * * [and] that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

5.

Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978).

{¶ 12} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought and identify those portions of the record that affirmatively demonstrate the absence of a genuine issue of material fact—not the reliance on conclusory assertions that non-movant has no evidence to prove its case—regarding an essential element of the non-movant's case. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 6th Dist. Sandusky No. S-16-041, 2017-Ohio-4467, ¶ 14. When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E). *Id*. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Id*.

{¶ 13} Helen argues that because the terms of the Wood Bird trust agreement do not expressly allow it to be revoked or amended by the decedent's will or codicil, there is no genuine issue of material fact for trial, and she is entitled to judgment as a matter of law. We agree.

{¶ 14} In support of summary judgment, Helen points to the trust agreement, which is in the record. We find that the document entitled, "Trust Agreement of Wood Bird, Ltd.," is dated August 24, 2010, and bears the signature of the decedent as "grantor." Articles I and VI of the trust agreement state that upon the grantor's death, the

6.

membership units in the Ohio limited liability company, Wood Bird, Ltd. with entity No. 941907, transferred to the trustee, who was also the decedent. The successor trustees upon the death of the decedent are, in sequence, Helen, Joan, and Thomas. Article II states that upon the grantor's death the trustee shall transfer to Helen "100% of all membership units in this Limited Liability Company." If Helen predeceased the grantor, then the remaining eight siblings received the membership units as joint tenants with rights of survivorship. Article IV states, "Pursuant to ORC 5806.02(A) this trust may be amended or revoked at any time by the grantor." R.C. 5806.02(A) states that for instruments executed after January 1, 2007, "Unless the terms of a trust expressly provide that a trust is irrevocable, the settlor may revoke or amend the trust."

{¶ 15} To further evidence Helen acquired all membership units of Wood Bird, Ltd. upon decedent's death, the record contains the membership certificates of the Wood Bird, Ltd., which was formed in Ohio in 1996. Certificate No. C100, dated August 24, 2010, represents 100 "C Units – with Voting Rights" owned by the decedent with transfer on his death to the Wood Bird, Ltd. trust.

{¶ 16} The Ohio Supreme Court guides us in interpreting a trust agreement:

> To begin, we note that the powers and duties of a trustee are controlled by the terms of the trust instrument. Thus, a "fundamental [tenet] for the construction of a * * * trust is to ascertain, within the bounds of the law, the intent of the * * * settlor." "Generally, when the language

of the instrument is not ambiguous, intent can be ascertained from the express terms of the trust itself." (Citations omitted.) *Daloia v. Franciscan Health Sys. of Cent. Ohio, Inc.*, 79 Ohio St.3d 98, 102-103, 679 N.E.2d 1084 (1997). We find the Trust Agreement of Wood Bird, Ltd. is not ambiguous in its transfer of all Wood Bird, Ltd. membership units to Helen upon decedent's death. We further find the trust agreement is not ambiguous on the explicit manner in which it may be amended.

{¶ 17} Helen also points to the "Codicil to the Last Will and Testament of Edward F. Zoltanski" dated June 26, 2015, which is also in the record. The codicil, bearing the signatures of the decedent and two witnesses, amends his last will and testament dated March 10, 2010. The codicil contains two "items," where only "Item I" is relevant to this appeal and states as follows:

> In addition to, and without further altering the terms of my Last Will and Testament nor any other estate planning documents I may have executed in the past, I hereby give, devise and bequeath to my son, Stephen Zoltanski, of Belleville, Michigan, a certain piece of real estate in Wood County, Ohio, having Wood County Auditor's parcel No. P60-300-704107002000, owned by Wood Bird, Ltd., an Ohio Limited Liability Company, of which I am Managing Member. The subject real estate is improved by a four-unit apartment building. My Executor is instructed to

8.

take such actions as are required to transfer said real estate as set forth above to Stephen Zoltanski, as soon as practicable after my death.

{¶ 18} We find that according to the record, on October 18, 1999, the Wood Bird property was transferred from the decedent and his wife to Wood Bird, Ltd. That transfer resulted in the Wood Bird property being governed by the eventual transfer on death terms of both the membership units of Wood Bird, Ltd. and the trust agreement controlling ownership of those membership units.

{¶ 19} Helen then points to R.C. 5806.02(C), which states:

The settlor may revoke or amend a revocable trust by substantial compliance with a method provided in the terms of the trust * * *, provided that a revocable trust may not be revoked or amended by a will or codicil, regardless of whether it refers to the trust or specifically devises property that would otherwise have passed according to the terms of the trust unless the terms of the trust expressly allow it to be revoked or amended by a will or codicil.

{¶ 20} We find that Article IV of the Trust Agreement of Wood Bird, Ltd. does not expressly allow it to be revoked or amended by a will or codicil as required by the unambiguous language of R.C. 5806.02(C). *WesBanco, Inc. v. Blair*, 2d Dist. No. 2011 CA 90, 2012-Ohio-2337, 971 N.E.2d 420, ¶ 18. When a statute is unambiguous, we apply the statute as written. *Johnson v. Montgomery*, 151 Ohio St.3d 75, 2017-Ohio-7445, 86 N.E.3d 279, ¶ 15.

9.

{¶ 21} Helen having properly supported her motion for summary judgment, the burden shifts to Stephen to respond with specific facts showing that there is a genuine issue of material fact for trial in accordance with Civ.R. 56(E).

{¶ 22} Stephen points to the same documents as Helen while relying on R.C. 5804.15 to reform the trust agreement "to conform to the Decedent's undisputed intent to have Steve receive that property [Wood Bird] * * * as part of his compensation for the work he performed overseeing all of the apartment complexes." Stephen further argues R.C. 5804.15 is clear and unambiguous in its application to his situation: "The scrivener of the Codicil also acknowledges the Decedent's clear intent, and that a mistake occurred." Stephen argues, "While it was clear the Decedent's desire was to leave [Wood Bird] to Steve, there was a mistake as to the title of property": (1) the attorney who drafted the codicil for the decedent was not aware that the Wood Bird property was held in a trust; and (2) the title to the Wood Bird property was "presumably forgotten" when the decedent engaged the attorney to draft the codicil. Due to these mistakes, Stephen argues R.C. 5804.15 compels the reformation of the trust agreement.

{¶ 23} R.C. 5804.15 states: "The court may reform the terms of a trust, even if they are unambiguous, to conform the terms to the settlor's intention if it is proved by clear and convincing evidence that both the settlor's intent and the terms of the trust were affected by a mistake of fact or law, whether in expression or inducement." The official comments to R.C. 5804.15 provide explanations for the purpose and use of the statute: the settlor's original intent for the trust. In determining whether evidence is clear and

convincing, an appellate court may not as a matter of law substitute its judgment as to what facts are shown in the trial court record. *Cross v. Ledford*, 161 Ohio St. 469, 478, 120 N.E.2d 118 (1954). Since October 18, 1999, Wood Bird, Ltd. owned the Wood Bird property. Since August 24, 2010, the Wood Bird, Ltd. membership units and the Wood Bird, Ltd. trust agreement controlled that after decedent's death all of the membership units passed to Helen. We find that Stephen fails to provide clear and convincing evidence that on August 24, 2010, the decedent intended for Stephen, rather than Helen, to own all of the Wood Bird, Ltd. membership units.

{¶ 24} Stephen also supported his summary judgment opposition with two affidavits in the record: his own and from the attorney who prepared the codicil for the decedent. Both affidavits aver that the decedent intended the Wood Bird property transfer to Stephen upon the decedent's passing. However, both affidavits are silent as to the decedent's original intent when he created the Trust Agreement of Wood Bird, Ltd. to control the membership units of the entity owning the Wood Bird property.

{¶ 25} Although Stephen urges us to find a mistake exists as to the title to the Wood Bird property, there is no evidence in the record of such mistake. There was no effort by the decedent, who held all of the membership units in Wood Bird, Ltd. until his death, to change the title to the Wood Bird property from that limited liability company. As expressed by the probate court in its March 27, 2019 decision on summary judgment, "R.C. 5804.15 is about whether a mistake occurred with respect to the settlor's original intent, not whether the decedent changed his mind later on and failed to properly follow

11.

through with that change." We agree and find that under R.C. 5801.04(B), the terms of Trust Agreement of Wood Bird, Ltd. prevail over the statute.

{¶ 26} We conducted a de novo review of the record using the well-established standards under Civ.R. 56 and find there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of Stephen, reasonable minds can come to but one conclusion that Helen is entitled to summary judgment as a matter of law, and the Trust Agreement of Wood Bird, Ltd. is not subject to R.C. 5804.15 reformation.

{¶ 27} Stephen's first assignment of error is not well-taken.

## II. Constructive Trust

{¶ 28} In support of his second assignment of error, Stephen argues the remedy of a constructive trust "is necessary to effectuate Decedent's wishes" that Stephen should receive the Wood Bird property. Stephen argues, "But for the mistake in the title to the property, that would have occurred. These facts present the precise circumstances for which the remedy of constructive trust was created; these facts scream for equity to do that which ought to be done."

{¶ 29} The Ohio Supreme Court guides us in the purpose and use of a constructive trust:

A constructive trust is defined * * * as: " * * * [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by

12.

commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice." (Citation omitted.) *Ferguson v. Owens*, 9 Ohio St.3d 223, 225, 459 N.E.2d 1293 (1984).

{¶ 30} The party seeking a constructive trust bears the burden of proof by clear and convincing evidence to justify it. *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, ¶ 20. "'A constructive trust may not be impressed, however, just because there has been a moral wrong or abuse of a business or other relationship; rather, it requires a showing of a wrongful acquisition or retention of property.'" (Citation omitted.) *Soley v. Soley*, 6th Dist. Huron No. H-13-028, 2014-Ohio-3965, ¶ 20. As this court has previously stated, "[E]quity cannot be used to 'destroy or supplant a legal right' even though it is sometimes tempting to do so, because 'courts have a greater obligation to follow the law.'" (Citation omitted.) *Blausey v. VanNess*, 6th Dist. Ottawa No. OT-15-029, 2016-Ohio-5068, ¶ 7.

{¶ 31} The probate court's decision whether or not to impose a constructive trust, an equitable remedy, is reviewed on appeal for an abuse of discretion. *Dodson v. Maines*, 6th Dist. Sandusky No. S-11-012, 2012-Ohio-2548, ¶ 13; *Sandusky Properties v. Aveni*, 15 Ohio St.3d 273, 274-5, 473 N.E.2d 798 (1984). Abuse of discretion connotes a decision that is more than an error of law or of judgment, but is arbitrary, unreasonable,

13.

or unconscionable: not governed by any fixed rules or standard, irrational, or a view no reasonable man would adopt. *Id.* at 275.

{¶ 32} Having previously determined Stephen's allegations of mistake as to the title to the Wood Bird property do not apply to the trust agreement's origin in 2010, we do not find Stephen provides clear and convincing evidence a constructive trust is appropriate equitable relief to impose on the Wood Bird property. According to the record, Wood Bird, Ltd. owned the Wood Bird property at the time of the decedent's death, and all of the membership units of that limited liability company passed to Helen by the unambiguous terms of the Trust Agreement of Wood Bird, Ltd. The codicil relied upon by Stephen states, "In addition to, and without further altering the terms of my Last Will and Testament nor any other estate planning documents I may have executed in the past, * * *." We agree with the probate court and do not find clear and convincing evidence of the decedent's intent to change anything, such as the Trust Agreement of Wood Bird, Ltd., other than his last will and testament. Stephen testified at trial that the decedent did not intend to change anything other than his will: "[T]he codicil was needed because it was decided by my father that that was going to be the vehicle to give me the [Wood Bird property]."

{¶ 33} We reviewed the record and find the probate court did not abuse its discretion, and the probate court's attitude was not unreasonable, arbitrary or unconscionable, when it denied Stephen's claim to impose a constructive trust on the Wood Bird property.

14.

{¶ 34} Stephen's second assignment of error is not well-taken.

### III. Power of Attorney

{¶ 35} In support of his third assignment of error, Stephen argues the power of attorney he received from the decedent on April 1, 2015, authorized him to transfer from Helen to himself six accounts with Huntington Bank and one account with Fifth Third Bank. Stephen argues the valid power of attorney is a complete defense to Helen's claims against Stephen for conversion, self-dealing, and breach of fiduciary duty, and the trial court erred when it granted the funds from the Huntington Bank accounts to Helen.

{¶ 36} "'A power of attorney is a written instrument authorizing an agent to perform specific acts on behalf of his principal.'" (Citation omitted.) *Hutchings v. Hutchings*, 6th Dist. Sandusky No. S-19-008, 2019-Ohio-5362, ¶ 26. We interpret a power of attorney according to contract principles as a question of law, which we review de novo. *Kennedy v. Robinson Mem. Hosp.*, 2016-Ohio-6990, 72 N.E.3d 70, ¶ 22 (11th Dist.). Contracts should be construed so as to give effect to the intention of the parties, as expressed in the clear language used by the parties in the written document. *Polek v. Tillimon*, 6th Dist. Lucas No. L-01-1354, 2002 WL 313401, *2 (Mar. 1, 2002); *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus.

{¶ 37} The April 1, 2015 power of attorney from decedent, as principal, to Stephen, as attorney-in-fact, is in the record. Stephen testified at trial that on his own initiative he searched the internet for an Ohio power of attorney, printed a form from

15.

those search results, and presented it to the decedent to sign. The decedent was an attorney, and Stephen is not. Article I of the internet document states:

This legal document grants you (Hereinafter referred to as the 'Principal') the right to transfer unlimited financial powers to someone else (Herein after referred to as the 'Attorney-on-Fact"), unlimited financial powers are described as: all financial decision making power legal under law. * * * The Principal continues to retain every right to all their financial decision making power and may revoke this General Power of Attorney Form at any time. The Principal may include restrictions or requests pertaining to the financial decision making power of the Attorney-in-Fact. It is the intent of the Attorney-in-Fact to act in the Principal's wishes put forth, or, to make financial decisions that fit the Principal's best interests."

{¶ 38} That same day, Stephen used the power of attorney to immediately remove Helen from six Huntington accounts, eliminating her ownership, survivorship, and payable-on-death beneficiary rights. The record contains the signature cards for the disputed bank accounts. In 2013 and 2014, Helen and the decedent signed signature cards for five accounts to be held jointly with rights of survivorship, and, in one case, with Helen also as the payable-on-death beneficiary. On April 1, 2015, Stephen signed new account signature cards for himself individually and as "POA" for the decedent as co-owners. For the sixth account, in 2013 the decedent signed the account signature card to be held individually, and Helen was the named payable-on-death beneficiary. On

16.

April 1, 2015, Stephen signed a new account signature card for himself individually and for decedent, as "POA," creating co-ownership. Upon the decedent's death, Stephen held all the rights to these six bank accounts.

{¶ 39} R.C. 1337.42(A)(3)-(4) governs general powers of attorney relevant to this matter:

An agent under a power of attorney may do any of the following on behalf of the principal or with the principal's property only if the power of attorney expressly grants the agent the authority and if exercise of the authority is not otherwise prohibited by another agreement or instrument to which the authority or property is subject, and, with respect to a revocable trust of which the principal was the settlor, if the trust agreement expressly authorizes the agent to exercise the principal's powers with respect to the revocation, amendment, or distribution: * * * (3) Create or change rights of survivorship; [and] (4) Create or change a beneficiary designation * * *.

{¶ 40} We reviewed the record de novo and find that the power of attorney from the decedent to Stephen fails to expressly authorize Stephen to change Helen's rights of survivorship and to change her beneficiary designation to the various bank accounts. Stephen testified at trial the decedent was fully competent when he read and signed the general power of attorney. By accepting that evidence in the record, we must conclude that the decedent intended to expressly fail to authorize in the power of attorney any

17.

changes pursuant to R.C. 1337.42(A)(3)-(4).  The trial court did not err when it determined Helen's rights to the six Huntington Bank accounts after the decedent's death.

{¶ 41} Stephen's third assignment of error is not well-taken.

## IV.  Necessary Party

{¶ 42} In support of her sole assignment of error, Helen argues the trial court abused its discretion when it found that Fifth Third Bank was a necessary party to case No. PC 2015-1425-D.  Helen argues that the account number ending in 8303 at Fifth Third Bank was opened by the decedent on August 31, 2010, jointly with Helen with rights of survivorship, and payable on death to Thomas.  Helen argues that on May 27, 2015, Stephen used the new general power of attorney to replace her with himself as the joint owner of account No. 8303.  Helen further argues that Stephen opened on May 27, 2015, account number ending in 5868 at Fifth Third Bank in the name of the decedent and himself, and he immediately made an online transfer of $154,291.11 from account No. 8303 to account No. 5868.  Stephen then closed account No. 5868 on September 7, 2016, by withdrawing $148,987.91.  Helen concludes that unlike her claims against Huntington Bank in her complaint, she did not allege any negligence by Fifth Third Bank, and Fifth Third Bank was not a necessary party for her claims against Stephen.

{¶ 43} We review the probate court's decision on whether Fifth Third Bank was a necessary party for an abuse of discretion.  *Hambleton v. R.G. Barry Corp.,* 12 Ohio St.3d

18.

179, 184, 465 N.E.2d 1298 (1984); *Plumbers & Steamfitters Local Union 83 v. Union Local School Dist. Bd. of Edn.*, 86 Ohio St.3d 318, 323-24, 715 N.E.2d 127 (1999).

{¶ 44} Determinations of whether a party is necessary are guided by Civ.R. 19(A), which states:

> A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. If he has not been so joined, the court shall order that he be made a party upon timely assertion of the defense of failure to join a party as provided in Rule 12(B)(7). If the defense is not timely asserted, waiver is applicable as provided in Rule 12(G) and (H).

{¶ 45} In this case, Stephen did not raise the defense of Helen's failure to join Fifth Third Bank as a party as provided in Civ.R. 12(B)(7).

{¶ 46} The Ohio Supreme Court has declared that dismissing an action because an indispensable party is not mandatory because of alternatives: joinder under Civ.R. 19(A),

19.

leave to amend the complaint under Civ.R. 15(A), and adding a party under Civ.R. 21. *Plumbers* at 321. "Indeed, dismissal due to a party's failure to join a necessary party is warranted only where the defect cannot be cured." *State ex rel. Bush v. Spurlock*, 42 Ohio St.3d 77, 81, 537 N.E.2d 641 (1989). "Mere avoidance of multiple litigation is not a sufficient basis to render one an indispensable party." *Layne v. Huffman,* 43 Ohio App.2d 53, 59, 333 N.E.2d 147 (10th Dist.1974). A trial court abuses its discretion if it dismisses a complaint for failure to join an indispensable party where it fails to apply the Civ.R. 19 factors. *Pyles v. Mullen*, 9th Dist. Lorain No. 11CA010101, 2012-Ohio-2238, ¶ 7.

{¶ 47} Helen's complaint at Count VI against Stephen for conversion, self-dealing and breach of fiduciary duty alleged that the decedent "had accounts at other financial institutions" originally titled jointly with Helen and that "Stephen used his authority under the power of attorney to transfer the accounts at the other financial institutions prior to Edward's death in a manner that benefited Stephen to the exclusion of Helen." In her prayers for relief, Helen sought legal and equitable relief for the funds originating in the Huntington Bank accounts "and any other account at other financial institutions."

{¶ 48} We find that pursuant to Civ.R. 8(A), Helen's complaint complied with the requirement to contain a short and plain statement of her claim that she is entitled to relief and a demand for judgment from Stephen. Ohio is a notice pleading state, and Helen was not required to aver with particularity her claims against Stephen regarding any particular

20.

account at Fifth Third Bank. *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29.

{¶ 49} The probate court determined that Fifth Third Bank was a necessary party pursuant to Civ.R. 15(D). "As such, any asserted claim for relief involving accounts or assets located originally in a Fifth Third Bank account are found not properly before the court as a matter of procedure." We disagree.

{¶ 50} We find that for nearly three years prior to issuing its judgment, the probate court had ample evidence in the record that Fifth Third Bank had none of the funds in dispute between Helen and Stephen. The record traces $154,291.11 from Helen's account No. 8303 to Stephen's account No. 5868, but is unclear where he transferred the money after he closed account No. 5868 on September 7, 2016, with a balance of $148,987.91.

{¶ 51} If the probate court had issued a judgment against Stephen with respect to a Fifth Third Bank account, then Stephen would be responsible for satisfying that judgment. If Stephen failed to satisfy such judgment, Helen could pursue an action to enforce judgment against Stephen. *See Haynes v. Therrien*, 6th Dist. Lucas No. L-89-306, 1990 WL 157288, *3 (Oct. 19, 1990). Even in the absence of Fifth Third Bank as a party to the litigation, Helen can be accorded complete relief from Stephen by the probate court's judgment.

{¶ 52} None of the Civ.R. 19(A) criteria are found in the record. There is no evidence of how Stephen or Helen would call upon Fifth Third Bank to satisfy the

judgment from a closed account. There is no evidence of what interest Fifth Third Bank has in this litigation to a voluntarily closed account "and is so situated that the disposition of the action in [its] absence may * * * as a practical matter impair or impede [its] ability to protect that interest." Nor is there evidence of what interest Fifth Third Bank has in a voluntarily closed account that would subject Stephen to multiple obligations. Further, there is no evidence Fifth Third Bank has an interest in a voluntarily closed account as an assignor, assignee, subrogor, or subrogee.

{¶ 53} We also find the probate court failed to determine, pursuant to Civ.R. 19(B), whether in equity and good conscience the litigation could not proceed in the absence of Fifth Third Bank. We find the record fails to show the extent to which the probate court's judgment rendered in the absence of Fifth Third Bank might be prejudicial to Fifth Third Bank, Stephen, Helen, or Huntington Bank. There is only a vague statement in the probate court's judgment that Fifth Third Bank might have wanted to "participate and provide evidence and information relative to the underlying case" with a reference to Civ.R. 15(D). However, there is no evidence the probate court would have shaped relief or included protective provisions in its judgment to lessen or avoid alleged prejudice to Fifth Third Bank. There is no evidence the probate court's judgment against Stephen would have been inadequate in the absence of Fifth Third Bank as a party. Finally, there is no evidence Helen "will have an adequate remedy if the action is dismissed for nonjoinder."

22.

{¶ 54} We reviewed the record and find the probate court abused its discretion, and the probate court's attitude was unreasonable when it declared Fifth Third Bank was a necessary party with an unknown identity pursuant to Civ.R. 15(D). We find at most Fifth Third Bank is a nominal party. A party is nominal if its presence is merely formal or unnecessary for a just and proper resolution of the claims presented. *State ex rel. Yeaples v. Gall*, 141 Ohio St.3d 234, 2014-Ohio-4724, 23 N.E.3d 1077, ¶ 22.

{¶ 55} Helen's sole assignment of error is well-taken.

{¶ 56} The judgments of the Wood County Court of Common Pleas, Probate Division, are affirmed, in part, and reversed, in part. The judgment entry in probate case No. PC 2015-1425-A journalized on June 21, 2019 is affirmed. The judgment entry in probate case No. PC 2015-1425-C journalized on June 21, 2019 is affirmed. The judgment entry in probate case No. PC 2015-1425-D journalized on June 21, 2019 is affirmed, in part, and reversed, in part. That matter is remanded for proceedings consistent with this decision. Appellant/cross-appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgments affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

24.

Mark L. Pietrykowski, J.                                         _____
                                                                                        JUDGE

Arlene Singer, J.

                                                 _____
Thomas J. Osowik, J.                                          JUDGE
CONCUR.

                                                 _____
                                                                                        JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.